JOSEPH HULL, *et al., Appellants,* v. ARTHUR E. BURR, AS TRUSTEE, IN BANKRUPTCY, ETC., *Appellee.*

1. Section 2494 of the General Statutes of 1906, providing that "All deeds of conveyance, obligations conditioned or defeasible, bills of sale or other instruments of writing conveying or selling property, either real or personal, for the purpose or with the intention of securing the payment of money, whether such instrument be from the debtor to the creditor or from the debtor to some third person in trust for the creditor, shall be deemed and held mortgages, and shall be subject to the same rules of foreclosure and to the same regulations, restraints and forms as are prescribed in relation to mortgages," is quite comprehensive in its scrope and should be liberally construed in order to carry out the legislative intent.

2. An instrument must be deemed and held a mortgage, whatever may be its form, if, taken alone or in connection with the surrounding facts and attendant circumstances, it appears to have been given for the purpose or with the intention of securing the payment of money, and the mere absence of terms of defeasance cannot determine whether it is a mortgage or not.

3. In construing any written instrument, whether a deed of conveyance, a bill of sale, mortgage, contract or what not, the entire instrument must be considered in order to gather the real intent and to determine the true design of the makers thereof. To that end, all the different provisions of such instrument must be looked to and all construed so as to give effect to each and every of them, if that can reasonably be done. If clauses therein seem to be repugnant to each other,

they must be given such an interpretation and construction as to reconcile them if possible, remembering that the intent is the principal thing to be regarded. If one interpretation, looking to the other provisions of the instrument and its general scope, would lead to an absurd conclusion, such interpretation must be abandoned and one adopted which will be more in accord with reason and probability.

4. Courts of equity in pursuance of a wise and benign rule, in cases of doubt as to whether the parties intended the transaction to be an absolute deed of conveyance or bill of sale, conditional sale or a mortgage, will deem and hold the transaction and instrument to constitute a mortgage.

This case was decided by Division A.

Appeal from the Circuit Court for Polk County.

### STATEMENT.

On the 26th day of March, 1908, the appellee as complainant filed his original bill against the appellants as defendants. A demurrer was interposed to such bill upon which the trial court made the following order: "The demurrer to the bill assigns a number of grounds which are not tenable among them that there is no averment of a distinct agreement between the Port Tampa Phosphate Company and Hull, that the deed to the latter from Stuart and Meminger should operate as a mortgage. While this is true, there is an averment of a loan and the taking of the deed as security for its repayment. This is sufficient to constitute the deed a mortgage. Nor, under the case stated was it necessary to aver a tender. But as there is no positive and definite allegation as to the amount of money made by the present holder of the property, over and above Hull's claims against it, but only an assumption, there should be in the bill an offer

28—Vol. 58.

to pay the defendants any sum or sums of money which may be ascertained to be due them, or either of them on an accounting, that is due them from the bankrupt estate. The demurrer will be sustained on that ground, and overruled on all the others. The complainant will have leave to amend his bill and the defendants be allowed 60 days after notice of the amendment in which to answer or plead."

On the 14th day of September, 1908, the complainant filed his amended bill, which with the exhibit attached thereto is as follows, omitting the purely formal parts:

"Your orator, Arthur E. Burr, as Trustee in Bankruptcy of the estate of the Port Tampa Phosphate Company, a corporation, brings this, his bill of complaint, against Joseph Hull, the Prairie Pebble Phosphate Company, a corporation, and Savannah Trust Company, a corporation, and thereupon your orator complains and says.

*First.* That heretofore, to-wit: on the 19th day of November, A. D. 1904, one Clarence A. Boswell of Polk County, Florida, made and entered into a certain contract with one Hiram W. Rowell, whereby the said Clarence A. Boswell agreed to sell to the said Hiram W. Rowell, and the said Hiram W. Rowell agreed to purchase from the said Clarence A. Boswell the following described premises lying, being and situate in Polk County, Florida, to-wit: The south half, and the south half of the northeast quarter, and the southeast quarter of the northwest quarter of Section thirty-four (34) in Township Twenty-nine (29) South Range Twenty-three (23) east, containing in all four hundred and forty (440) acres more or less, subject to a right-of-way for a railroad track across said land according to the terms of an agreement of even date therewith, together with the buildings situate thereon, consisting of three storehouses, one mill building, eleven dwell-

ing houses and one commissary and office building. Also the following personal property located upon said premises and described as follows: One drier, three (3) stationary engines, six boilers, five force pumps, one lot of tools, one Worthington pump 6x9x10, one feed and service pump 3" suction and 4" discharge; all elevator chains and buckets, two rock cars, twelve hundred feet steel rails, all pulleys, shaftings, sprockets, wheels, rotary and wrinsing screens, debris, hoppers, one Cameron pump No. 10, one Cameron pump 18x9x20, one Cameron pump No. 15564 6" discharge and 6" suction, one lot of boiler tubes, all iron and galvanized pipe, all pipe fittings, gears, pulleys, valve and valve fittings, one lot of box and post hangers, two vertical marine engines, one Moran joint, and all other personal property including office furniture and fixtures.

*Second.* That thereafter to-wit: on December 6th, A. D. 1904, the said Hiram W. Rowell for a valuable consideration assigned and transferred the said contract together with all of his right, title and interest in and to the premises therein described to the Port Tampa Phosphate Company, a corporation, and the said Port Tampa Phosphate Company immediately entered into possession of the said premises described in the said contract and became the equitable owner thereof subject to the payment to the said Clarence A. Boswell of an unpaid balance of the purchase price amounting to approximately twelve thousand dollars.

*Third.* That the said premises so embraced in the said contract assigned by the said Hiram W. Rowell to the said Port Tampa Phosphate Company were acquired by it for the purpose of carrying out the objects for which the said corporation was incorporated, viz: the establishment and operation of a phosphate plant, and the said premises of which the said Port Tampa Phosphate Com-

pany became the equitable owner as aforesaid, subject to
the payment of the unpaid balance of the purchase price
to the said Clarence A. Boswell, constituting the entire
plant and property then or thereafter acquired by the
said Port Tampa Phosphate Company for the purpose of
carrying out the aforesaid purpose for which it was in-
corporated, and the assignment of his rights under the
aforesaid contract with the said Clarence A. Boswell by
the said Hiram W. Rowell was made to the said Port
Tampa Phosphate Company in consideration of certain
stock of the said corporation issued to him as an equiva-
lent for the rights so transferred to the said corporation.

*Fourth.* That immediately upon the transfer by the
said Hiram W. Rowell to the said Port Tampa Phosphate
Company of his rights under the aforesaid contract with
the said Clarence A. Boswell and his rights in and to
the premises therein mentioned and described the said
Port Tampa Phosphate Company entered into possession
of the said premises, and proceeded to complete and
extend the phosphate plant which had been partially con-
structed thereon, preparatory to commencing mining
operations when the same should be fully completed, so
as to carry out the object for which the said Port
Tampa Phosphate Company was incorporated, and in
making the said improvements and completing and ex-
tending of said plant the said Port Tampa Phosphate
Company expended a large sum of money on the said
premises, to-wit: upwards of the sum of sixty thousand
dollars.

*Fifth.* That thereafter, to-wit, on the 27th day of May,
A. D. 1905, the said Port Tampa Phosphate Company
being pressed for payment by E. C. Stuart and C. G.
Meminger, to whom the said Clarence A. Boswell had
assigned his rights under the aforesaid contract, upon
which there was then due an unpaid balance amounting

to upwards of the sum of twelve thousand dollars, applied to the defendant Joseph Hull for a loan of money with which to pay the said balance, together with a small amount of additional indebtedness then owed by the said Port Tampa Phosphate Company, and also certain other moneys that would be required by the said Port Tampa Phosphate Company to complete the said phosphate plant on the said premises, and the said Joseph Hull agreed to advance the said moneys to the said Port Tampa Phosphate Company, but, the legal title to the said premises not having vested in the said Port Tampa Phosphate Company was unwilling to accept a mortgage from it and required that the deed of conveyance to said premises to be executed on the payment of the balance of the purchase price should be made to him, the said Joseph Hull, so as to secure him for the money then advanced and thereafter to be advanced by him for the completion of the said plant.

*Sixth.* That the said Port Tampa Phosphate Company being financially embarrassed and unable to procure money with which to pay the balance of the purchase price of the said premises and to complete the said plant and protect it in its outlay already made amounting to upwards of the sum of sixty thousand dollars in cash its Board of Directors assented to the terms of the defendant, Joseph Hull, and agreed that the said deed of conveyance to the said premises, to be delivered on payment of the balance of the purchase price, should be made to the said defendant, Joseph Hull, upon his entering into an obligation to convey the same to the said Port Tampa Phosphate Company upon being repaid the sum of money then advanced by the said defendant, Joseph Hull, and such sums as he might thereafter advance for the purpose of completing the said phosphate plant, but the said proposition of the said Joseph Hull was never submitted by the said

Board of Directors to the stockholders of the said Port Tampa Phosphate Company, or assented to by the stockholders of the said Port Tampa Phosphate Company, although the said premises embraced and included all of the property and assets of the said corporation.

*Seventh.* That in pursuance of the said agreement between the defendant, Joseph Hull, and the Board of Directors of the said Port Tampa Phosphate Company, the defendant Joseph Hull, advanced the sum of thirteen thousand, four hundred and four and 77-100 dollars, with which to pay to E. C. Stuart and C. G. Meminger the balance of the purchase price of the said premises, and the said premises at the request of the Board of Directors of the said Port Tampa Phosphate Company were conveyed by the said E. C. Stuart and C. G. Meminger, then the owners thereof, to the said Joseph Hull, and contemporaneously therewith as part of the same transaction, the defendant Joseph Hull, executed and delivered to the said Port Tampa Phosphate Company an agreement in writing dated June 9th, 1905, whereby he agreed to convey the said premises to the said Port Tampa Phosphate Company upon the repayment to him within four months from said date of the said sum of thirteen thousand, four hundred and four and 77-100 dollars so advanced by him and such other and further sums of money as he might thereafter advance for the improvement or operation of the said property, together with a profit of sixteen per cent on any sum either advanced or paid out, all of which will more fully appear by reference to a true copy of the said agreement which is hereto annexed, marked Exhibit 'A' hereto and hereby made by reference a part of this bill of complaint as fully as if the same were herein incorporated *in haec verba*.

*Eighth.* That after the execution and delivery of the said deed of conveyance of the said premises to the de-

fendant, Joseph Hull, and after the execution and delivery by the said Joseph Hull, and the said Port Tampa Phosphate Company of the instrument, exhibit 'A' hereto, the said Port Tampa Phosphate Company continued and remained in possession of the said premises, and continued to make improvements thereon, and continued to endeavor to complete the phosphate plant thereon so as to place the same in condition for mining phosphate from the said premises, and the said Joseph Hull advanced to the said Port Tampa Phosphate Company for the purpose of carrying on the said improvements and completion of said plant, sums of money from time to time, the exact amount of which is unknown to your orator, but your orator alleges on information and belief that the sums of money so advanced by the said defendant Joseph Hull, subsequently to the execution of the said deed of conveyance to him amounted to approximately the sum of Twelve thousand dollars, and all of the said moneys so advanced were applied by the said Port Tampa Phosphate Company towards the construction, extension and completion of the said phosphate plant on the said premises.

*Ninth.* That the said Port Tampa Phosphate Company continued in possession of the said premises, and continued to endeavor to complete the same, preparatory to commencing mining operations thereon, until, to-wit, November 9th, A. D. 1905, when, owing to its embarrassed circumstances, a petition in bankruptcy was filed against it in the District Court of the United States for the District of Massachusetts, under the laws of which State the said Port Tampa Phosphate Company was incorporated, and where it had its domicile, and the said Port Tampa Phosphate Company, to-wit, on the 27th day of November, A. D. 1905, was duly adjudged a bankrupt by the said District Court of the United States for the District of Massachusetts, and your orator was duly appointed on

the said date as Trustee of the said bankrupt corporation, and thereafter, to-wit, on the 27th day of December, A. D. 1905, your orator duly qualified as such Trustee, and is now trustee of the bankrupt estate, and as such trustee your orator brings this bill of complaint.

*Tenth.* That immediately upon the appointment of your orator as trustee in bankruptcy of the said Port Tampa Phosphate Company all of the property including that herein described of which the said Port Tampa Phosphate Company was in possession at the time of the said adjudication and of the appointment and qualification of your orator as trustee in bankruptcy vested in your orator as such trustee in bankruptcy, and your orator became entitled to the possession thereof, but your orator alleges that after his appointment and qualification as trustee in bankruptcy of the estate of said corporation, the defendant, Joseph Hull, instituted an action of ejectment in the Circuit Court of the United States for the Southern District of Florida against one N. B. Childs and the said Port Tampa Phosphate Company, to which your orator was not made a party, nor did he become a party, and in which no service was had upon the said Port Tampa Phosphate Company or any officer, agent or representative of the said Port Tampa Phosphate Company, and in which it did not appear, but in which, as your orator is informed and believes, the only service made was upon N. B. Childs, a deputy sheriff of Polk County, Florida, in possession of the personal property on the said premises under certain writs of attachment issued out of the Circuit Court of Polk County, Florida, and in the said proceeding in the Circuit Court of the United States for the Southern District of Florida to which neither the said Port Tampa Phosphate Company nor your orator were made, or become, parties, the defendant, Joseph Hull, on or about the 3rd day of March, A. D. 1906, secured a judgment by

default and a final judgment purporting to award him possession of the said premises, and under the said judgment the defendant, Joseph Hull, entered into the possession thereof.

*Eleventh.* That thereafter, to-wit, on the 6th day of November, A. D. 1906, the defendant, Joseph Hull, who was then and is now a large stockholder and the president of the defendant, Prairie Pebble Phosphate Company, a corporation, undertook to convey the said premises to the Prairie Pebble Phosphate Company, but your orator alleges that the said Prairie Pebble Phosphate Company at the time of the conveyance to it of the said premises had full notice and knowledge of all the facts hereinbefore set forth, and of your orator's rights in the premises, and thereafter, to-wit, on the 25th day of July, A. D. 1907, the said Prairie Pebble Phosphate Company undertook to mortgage the said premises, together with other premises, to the defendant Savannah Trust Company of which corporation the defendant, Joseph Hull, was also a large stockholder, and a director and officer, which last mentioned corporation at the time of the execution and delivery to it of the said mortgage, the amount, terms and conditions of which are unknown to your orator, also had full notice and knowledge of all of the facts hereinbefore set forth and of your orator's rights in the premises.

*Twelfth.* Your orator further alleges that the defendant Joseph Hull, and the defendant, Prairie Pebble Phosphate Company, since acquiring possession of the said premises as hereinbefore set forth, have operated the same as a phosphate plant and mining plant and removed from the soil of said premises and mined therefrom many thousand tons of phosphate rock and sold and disposed of the same, and that if an accounting were had between your orator and the said defendants there would be due to your orator, after paying in full all moneys advanced by

the defendant, Joseph Hull, to the said Port Tampa Phosphate Company with interest thereon, a large sum of money to-wit, the sum of one hundred thousand dollars and upwards.

*Thirteenth.* Your orator further alleges that the deed of conveyance of the said premises to the defendant, Joseph Hull, by the said E. C. Stuart and C. G. Meminger, as aforesaid, in consideration of the payment by the said Joseph Hull of the balance of the said purchase price and the further advances to be made by the said Joseph Hull did not operate to make the defendant, Joseph Hull the owner thereof, but merely gave him a security thereon for the amount of his advances and interest for the following reasons, viz:

(a) The said premises constituted the entire plant and property of the said corporation acquired for the purpose of carrying out the business of the corporation for which it was incorporated, and that the same could not be sold by the board of directors of the said corporation without assent of its stockholders, which consent was never requested or given by the stockholders.

(b) The said premises after the execution and delivery of the said deed of conveyance to the said Joseph Hull continuously remained in the possession of the said Port Tampa Phosphate Company until after the appointment of your orator as trustee in bankruptcy of the said corporation, and the said Port Tampa Phosphate Company during all that period continuously exercised acts of dominion and ownership over the same with the consent of the defendant, Joseph Hull, and the consideration for the said conveyance was only a fractional part of the actual value of the said premises, and by reason thereof the said conveyance, if a conveyance, was fraudulent and void as to creditors of the said Port Tampa Phosphate Company and your orator alleges that there were such

creditors then existing whose claims still remain unpaid.

(c)   The said conveyance to the said Joseph Hull, in connection with the said instrument of defeasance, Exhibit 'A' hereto were and constituted a mere security and the said Port Tampa Phosphate Company at all times, prior to the appointment of your orator as its trustee in bankruptcy, was the equitable owner of the said premises, and your orator is now the equitable owner thereof.

*Fourteenth.* That your orator is entitled to an accounting from the defendants, Joseph Hull, and the Prairie Pebble Phosphate Company to determine the amount of phosphate rock that has been mined and removed from the said premises, and the other property that has been taken and removed therefrom or consumed by the said defendants, and to a determination on such accounting of the value thereof, and to a decree that the balance found to be due to your orator on such accounting after deducting all moneys advanced by the defendant, Joseph Hull, to the said Port Tampa Phosphate Company shall be paid to your orator as trustee in bankruptcy of the said Port Tampa Phosphate Company, and that the said premises shall be conveyed by the said Prairie Pebble Phosphate Company to your orator as such Trustee in Bankruptcy, and that any claim on the part of the said defendant, Prairie Pebble Phosphate Company, a corporation, or the said Savannah Trust Company, a corporation, shall be cancelled as clouds upon the title of your orator to the said premises.

*Fifteenth.* And should such accounting when completed as prayed by your orator, show that there is due to the said Joseph Hull from the Port Tampa Phosphate Company on the money advanced to said company, any sum or sums of money whatsoever, your orator stands ready and willing to pay the same to the said Joseph Hull and hereby expressly agrees to pay the same into

court as soon as any such amount of indebtedness should be ascertained.

To the end, therefore, that the said defendants, Joseph Hull, and the Prairie Pebble Phosphate Company, a corporation, and the Savannah Trust Company, a corporation, and each of them, may if they can show cause why your orator should not have the relief herein and hereby prayed and that they may, but not under oath, answers under oaths of the said defendants being hereby expressly waived, according to the best and utmost of their several and respective knowledge, remembrance, information and belief, full, true, direct and perfect answer make to all and singular the premises in as full and particular a manner as if the same were herein set forth as interrogatories and the said defendants specially interrogated in regard thereto.

And in view of the premises may it please your Honor to order, adjudge and decree that an accounting be had by and under the direction of a master of the court, to be appointed for that purpose, to ascertain and report to the court the amount in full of all phosphate or other property that may have been removed by the defendant, Joseph Hull, or the Prairie Pebble Phosphate Company from the said premises, or otherwise converted by the defendants as well as the amount due to the defendant, Joseph Hull, for moneys advanced in the payment of the balance of the purchase price of the said premises, and for expenditures on the said property by the said Port Tampa Phosphate Company after the purchase of the said premises, and to further order, adjudge and decree that the said defendants, Joseph Hull and the Prairie Pebble Phosphate Company should pay to your orator as trustee in bankruptcy of the said Port Tampa Phosphate Company, the balance found to be due him upon such accounting.

May it please your Honor to order, adjudge and decree that the claims of the defendants, Joseph Hull, the Prairie Pebble Phosphate Company, .a corporation, and the Savannah Trust Company, a corporation, and each of them, shall be cancelled and set aside as clouds upon the title of your orator to the said premises, and that they and each of them shall execute .and deliver unto your orator sufficient deeds of release releasing unto your orator any and all their rights or claims therein, and that your orator shall thereupon be quieted in his title to the said premises as against the claims of the said defendants, and each of them.

May it further please your Honor to enjoin and restrain the defendants, Joseph Hull and the Prairie Pebble Phosphate Company, a corporation, and each of them, and their and of their agents, servants and employees during the pendency of this litigation from mining or removing any phosphate rock or other property from the premises herein described, and to further order, adjudge and decree that a receiver of the said premises be appointed to take charge and control of the same, and to care for and protect the same during the pendency of this litigation, and that your orator may have such other and further relief as he may be entitled to under the facts set up in his bill.

### Exhibit ' A.'

*THIS AGREEMENT* made this 9th day of June, 1905, between *THE PORT TAMPA PHOSPHATE COMPANY*, a corporation of the State of Massachusetts of the first part, and *JOSEPH HULL* of Savannah, Georgia, of the second part;

*WHEREAS*, the said Port Tampa Phosphate Company owns the property hereinafter described under and by

virtue of a certain contract dated the 19th day of November, 1904, between Clarence A. Boswell and wife of the first part, and H. W. Rowell of the second part, which said contract has been duly assigned by the said Rowell to the said Port Tampa Phosphate Company; and

WHEREAS, the said Port Tampa Phosphate Company, under and by virtue of a certain resolution of the Board of Directors of said company passed on the 23rd day of May, 1905, has sold the said property to the said Joseph Hull and has caused the same to be conveyed to the said Joseph Hull by E. C. Stuart and C. G. Meminger being the assignee of all the rights and interests of the said Boswell and wife under said contract; and

WHEREAS, the said Hull has agreed to sell back and reconvey the said property to the said Port Tampa Phosphate Company at any time within four months from the date hereof, upon the payment to him by the said Port Tampa Phosphate Company of the sum of thirteen thousand four hundred and four dollars and seventy-seven cents ($13,404.77) and such other and further sums of money which may have been advanced or paid out by the said Hull, in the improvement or operation of said property, together with a profit of sixteen per cent (16%) on any such sums so advanced or paid out.

NOW, THEREFORE, THIS AGREEMENT WITNESSETH That the said Joseph Hull for and in consideration of the premises, does hereby agree and bind himself, his executors and administrators and assigns, upon the payment to him by the said Port Tampa Phosphate Company or its assigns, of the said principal sum of $13,404.77 and of such other and further sums which may have been paid out or advanced by him in the operation or improvement of said property, together with a profit of sixteen per cent, on such sums so advanced or paid out, that he shall convey to the said Port Tampa

Phosphate Company, or its assigns, all the following described property:

The south half, and the south half of the northeast quarter and the southeast quarter of the northwest quarter of Section thirty-four (34) in Township twenty-nine (29) South Range Twenty-three (23) East, containing in all four hundred and forty (440) acres more or less, subject to a right-of-way for a railroad track across said land according to the terms of an agreement of even date herewith, together with the buildings situate thereon consisting of three storehouses, one mill building, eleven dwelling houses and one commissary and office building. And also the following personal property now located upon said premises and described as follows: One drier, three (3) stationary engines, six boilers, five force pumps, one lot of tools, one Worthington pump 16x9x10, one feed and service pump 3" suction and 4" discharge; all elevator chains and buckets, two rock cars, twelve hundred feet steel rails, all pulleys, shaftings, sprockets, wheels, rotary and wrinsing screens, debris, hoppers, one Cameron pump No. 10, one Cameron pump 18x9x20, one Cameron pump No. 16564 6" discharge and 6" suction, one lot of boiler tubes, all iron and galvanized pipe, all pipe fittings, gear, pulleys, valve and valve fittings, one lot of box and post hangers, two vertical marine engines, one Moran joint, and all other personal property including office furniture and fixtures.

The Port Tampa Phosphate Company agrees that if it shall fail to exercise its right to repurchase said property within the time prescribed, this contract shall forthwith become void and of non-effect, and the said Joseph Hull shall own said properties free from any claim or demand of the said Port Tampa Phosphate Company.

IN WITNESS WHEREOF the said Port Tampa Phosphate Company has caused this agreement to be executed

by its President and said Joseph Hull has executed the same in proper person in duplicate.

Signed, sealed and delivered          Joseph Hull,
in the presence of      Port Tampa Phosphate Company.
W. W. MacKall                          H. W. Rowell,
                                            Pres."

The amended bill differs from the original bill only in the insertion therein of the paragraph numbered "Fifteenth" and of the general prayer.

To such amended bill the defendants interposed two demurrers, which are as follows:

"Demurrer of the above named defendants and each of them to that part of the second bill of complaint of the said plaintiff in this cause designated therein by the number 'Thirteenth' and divided into sub-sections or paragraphs designated by the letters 'a,' 'b' and 'c' and which reads as follows:

*'Thirteenth.* Your orator further alleges that the deed of conveyance of the said premises to the defendant, Joseph Hull, by the said E. C. Stuart and C. G. Meminger, as aforesaid, in consideration of the payment by the said Joseph Hull of the balance of the said purchase price and the further advances to be made by the said Joseph Hull did not operate to make the defendant Joseph Hull the owner thereof, but merely gave him a security thereon for the amount of his advances and interest for the following reasons, viz:

(a)   The said premises constituted the entire plant and property of the said corporation acquired for the purpose of carrying out the business of the corporation for which it was incorporated, and the same could not be sold by the board of directors of the said corporation without assent of its stockholders, which consent was never requested or given by the stockholders.

(b)   The said premises after the execution and delivery of the said deed of conveyance to the said Joseph Hull continuously remained in the possession of the said Port Tampa Phosphate Company until after the appointment of your orator as trustee in bankruptcy of the said corporation, and the said Port Tampa Phosphate Company during all that period continuously exercised acts of dominion and ownership over the same with the consent of the defendant Joseph Hull, and the consideration for the said conveyance was only a fractional part of the actual value of the said premises, and by reason thereof the said conveyance, if a conveyance, was fraudulent and void as to creditors of the said Port Tampa Phosphate Company and your orator alleges that there were such creditors then existing whose claims still remained unpaid.

(c)   The said conveyance to the said Joseph Hull, in connection with the said instrument of defeasance, Exhibit 'A' hereto were and constituted a mere security and the said Port Tampa Phosphate Company at all times prior to the appointment of your orator as its trustee in bankruptcy, was the equitable owner of the said premises, and your orator is now the equitable owner thereof.'

These defendants and each of them by protestation, not confessing or acknowledging all or any of the matters and things in that part of the said plaintiff's bill contained and hereby demurred to to be true in the manner and form as the same is therein and thereby set forth and alleged, do demur to said part of the said bill and for cause of demurrer show:

1.   On the ground that the said part and thirteenth section of the bill attempts to state a cause of action separate and distinct from the remainder of the bill of

29—Vol. 58.

complaint, and does not state any separate cause of action.

2.   That said part and thirteenth section of the bill in no way aids to make out a cause of action as set up in the remainder of the bill not covered by this demurrer.

3.   That the plaintiff does not represent the stockholders of The Port Tampa Phosphate Company, and if he did represent them, he is estopped and has lost his right by lapse of time and acquiescence to question the said conveyance to defendant Hull as a valid deed of conveyance of the legal title.

4.   That evidence is admissible, if admissible at all, under the allegations of the other parts of the bill nor covered by this demurrer of the value of the property at the time of said conveyance to Hull and of the amount Hull paid for said conveyance.   And sub-section of said thirteenth section of the bill designated therein by the letter 'b' states no issuable facts tending to establish that such conveyance was fraudulent and void as to creditors of the said The Port Tampa Phosphate Company, but states merely an argumentative conclusion of law.

5.   That sub-section of the thirteenth section of the bill designated by the letter 'c' attempts to set up that said deed of conveyance to defendant Hull and his contract with The Port Tampa Phosphate Company, Exhibit 'A' to the bill and made a part thereof, constitute a distinct cause of action separate from and independent of the allegations in the bill not covered by this demurrer, but they do not state such cause of action.

6.   And on other grounds apparent on the face of the said thirteenth section of the bill."

"The demurrer of the above named defendants to a part of second bill of complaint of the said plaintiff in this cause.

These defendants by protestation, not confessing or acknowledging all or any of the matters and things in the said plaintiff's bill contained to be true in the manner and form as the same are therein and thereby set forth and alleged, do severally demur to a part of the said bill and for cause of demurrer show:

1.   That the plaintiff hath not in and by the part of his said bill demurred to make or stated such a case as entitled him in a court of equity to the relief against them as prayed for in the said bill, or to any relief.

2.   Because in the part of the said bill of complaint demurred to there is no direct, positive averment that there was any agreement or contract between the defendant Joseph Hull and the said The Port Tampa Phosphate Company that the deed of conveyance of the property described in the bill by E. C. Stuart and C. G. Meminger was taken and held as a mortgage for money lent; and in this respect the said bill is too vague and uncertain to tender any issue.   There is no averment in the bill that the defendant Hull lent any money to The Port Tampa Phosphate Company or that The Port Tampa Phosphate Company borrowed any money from the said Hull.   The bill shows on its face and Exhibit attached thereto that The Port Tampa Phosphate Company never agreed to pay said Hull any money and never became bound to do so.

3.   Because in and by the 14th section of the said bill and the prayer thereof the plaintiff claims relief which this court is not competent to give in this: that this court has no power or jurisdiction to apply the rents and profits of the premises which may be due from the defendants or any of them—if any is due—to the payment of the moneys admitted in the said bill and claimed to be due Joseph Hull as a creditor of the said bankrupt. This court is without power or jurisdiction to decree

what, if anything, may be due from the defendants or either of them for phosphate removed from the land, to be applied to pay what is due Joseph Hull as set forth in the bill, whether the case made by the bill is that of a mortgage or not, because such moneys if any belong to the other creditors of the bankrupt.

4. Because the bill does not allege that the amount that the plaintiff admits to be due said Hull was ever tendered him before this suit was brought; and because there is no offer in the bill to do equity or that the plaintiff is ready, able and willing to pay the amount he admits to be due the said Hull; nor is there any excuse stated in the bill for not having tendered the amount due Hull before suit brought, and for not alleging in the bill that plaintiff was ready, able and willing to pay the amount which may be decreed to be due the said Hull, including moneys which may be found to be due to the defendants or either of them on account of improvements and betterments made by the defendants or either of them in good faith on the said properties.

5. Because it is shown in and by the said bill of complaint that the plaintiff as Trustee in Bankruptcy has a full and complete and adequate remedy at law; that his remedy at law is more complete and adequate than this court is competent to give upon the theory of the rights of the Trustee presented by the said bill.

6. The bill does not pray any discovery, and the court is without power or authority to grant the specific relief prayed.

7. No case is made by the bill for an accounting in equity, it appearing from the bill that if the plaintiff did not know how much money Hull paid out it was because plaintiff chose to be wilfully ignorant and could have known by making due inquiry either of the said Hull

or of the officers of the said The Port Tampa Phosphate Company.

7½. Because the bill is multifarious and a misjoinder of distinct causes of action, in that the Savannah Trust Company has no interest in respect to the amount Hull or The Prairie Pebble Phosphate Company owe plaintiff for rock removed, nor has either of the latter defendants any interest in respect to the amount the other owes for rock removed, and it is in violation of good pleading in a suit to remove a cloud on title to join therein money demands against a part of the defendants.

8. And for divers other good and sufficient grounds of demurrer appearing upon the face of said bill.

This demurrer is to all of the said second bill of complaint except that part of it or section numbered 13."

On the 9th day of February, 1909, the trial court made an order overruling each of such demurrers. From this interlocutory decree or order the defendants have entered their appeal to this court and have filed the following assignments of errors:

*"First.* The court erred in overruling the demurrer of the several defendants to all of the bill of complaint except the part of section thereof numbered thirteenth, in this: That the court should have sustained said demurrer on the ground that the facts stated in the bill do not entitle the plaintiff to any relief in a court of equity; and particularly because the said bill does not state any facts in issuable form to admit evidence to turn a deed absolute on its face into a mortgage security, there being in the said bill of complaint no direct, positive averment that there was any agreement or understanding between the defendant Joseph Hull and the said Port Tampa Phosphate Company that the deed of conveyance of the property described in the bill, by E. C. Stuart and C. G. Meminger was received and held as a mortgage for money lent;

and in this respect the bill is too vague and uncertain to tender any issue upon that subject. And because there is no averment in the bill that the defendant Hull ever lent any money to the Port Tampa Phosphate Company or that said company ever borrowed any money from the said Hull; nor does the bill show that the said company ever agreed to pay any money, or ever become bound to pay any money.

*Second.* The court below erred in overruling the said demurrer to said bill of complain on the ground that the plaintiff claims in and by the 14th section of said bill and prayer thereof relief which the court below was not competent to give, in this: That the said court had no power or jurisdiction to apply the rents and profits of the premises or the amount due from defendants for phosphate rock taken therefrom, if any was due, to the payment of moneys admitted in the said bill to be due Joseph Hull as a lien creditor of the said bankrupt. All moneys, if any, due the plaintiff on account of phosphate rock taken from the premises described in the bill belong to the general creditors of the bankrupt and neither the said trustee or the said court or any other court has power, authority or jurisdiction to apply the same to pay the said moneys admitted to be due Hull on the theory that he is a mortgagee.

*Third.* The court erred in overruling the said demurrer in this: That the bill does not allege that the amount the plaintiff admitted in said bill was due the said Hull was ever tendered him before this suit was brought.

*Fourth.* The court erred in overruling the said demurrer in this: That there is no averment in the bill of any offer to do equity, or that the plaintiff is ready, able and willing to pay the amount he admits to be due said Hull, nor is there any averment in the bill that the plain-

tiff is willing to pay the amount which the court may decree to be due the said Hull or any of the defendants.

*Fifth.* The court erred in overruling the said demurrer in this: That it is shown in and by the said bill of complaint that the plaintiff as trustee in bankruptcy has full and complete and adequate remedy at law, and that such remedy at law is more complete and adequate than a court of equity is competent to give upon the theory of the rights of the trustee as plaintiff, prayed by the said bill.

*Sixth.* The court erred in overruling the said demurrer in this: That the bill does not pray any discovery and the court was without power or authority to grant the specific relief prayed.

*Seventh.* The court erred in overruling said demurrer in this: That no case is made in and by the said bill for an accounting in equity, it appearing from the allegations in the bill that if the plaintiff did not know exactly how much money Hull paid out to the said Port Tampa Phosphate Company it was because plaintiff chose to be wilfully ignorant on the subject, and could have known the amount of said moneys by making the proper inquiry either of the said Hull or of the officers of the said Port Tampa Phosphate Company.

*Eighth.* The court erred in overruling the said demurrer in this: That the bill shows on its face that it is multifarious and a misjoinder of distinct causes of action in that the defendant The Savannah Trust Company has no interest with respect to the amount of money Hull or the Prairie Pebble Phosphate Company owe for rock removed from the said premises; nor have either of the last named defendants any interest in the amount the other owes for said rock removed.

*Ninth.* The court erred in overruling the said demurrer in this: That it appears from the said bill that it is one to remove a cloud on title, and the plaintiff in his said

bill has joined therein a money demand against some or all of the defendants which is contrary to the rule of good pleading.

*Tenth.* The court below erred in overruling said demurrer on the part of the said Prairie Pebble Phosphate Company and the said Savannah Trust Company on the ground that it is not shown in and by the said bill and the facts alleged therein that the said defendants were not bona fide purchasers for value without notice, but the contrary is shown in the said bill.

*Eleventh.* The court erred in overruling the second demurrer to the thirteenth paragraph or section of said bill, which in the said bill is divided into sub-sections designated by the letters a, b and c, and which said thirteenth section of the bill reads as follows:

'*Thirteenth.* Your orator further alleges that the deed of conveyance of the said premises to the defendant Joseph Hull by the said E. C. Stuart and C. G. Meminger as aforesaid, in consideration of the payment by the said Joseph Hull of the balance of the said purchase price and the further advances to be made by the said Joseph Hull did not operate to make the defendant, Joseph Hull, the owner thereof, but merely gave him a security for the amount of his advances and interest for the following reasons, viz:

(a)    The said premises constituted the entire plant and property of the said corporation acquired for the purpose of carrying out the business of the corporation for which it was incorporated, and the same could not be sold by the board of directors of the said corporation without assent of its stockholders which consent was never requested or given by the stockholders.

(b)    The said premises after the execution and delivery of the said deed of conveyance to the said Joseph Hull continuously remained in the possession of the said Port Tampa Phosphate Company until after the appointment

of your orator as trustee in bankruptcy of the said corporation, and the said Port Tampa Phosphate Company during all that period continuously exercised acts of dominion and ownership over the same with the consent of the defendant Joseph Hull and the consideration for the said conveyance was only a fractional part of the actual value of the said premises, and by reason thereof the said conveyance, if a conveyance, was fraudulent and void as to creditors of the said Port Tampa Phosphate Company and your orator alleges that there were creditors then existing whose claims still remains unpaid.

(c)   The said conveyance to the said Joseph Hull in connection with the said instrument of defeasance Exhibit 'A' hereto were and constituted a mere security and the said Port Tampa Phosphate Company at all times prior to the appointment of your orator as its trustee in bankruptcy was the equitable owner of the said premises and your orator is now the equitable owner thereof.'

Said error consists in this: That by the said thirteenth section it appears that the transaction finally consummated between the said Port Tampa Phosphate Company and the said Joseph Hull was a conditional sale of the premises in question, and that the said company not having paid the said Hull within the time limited in the contract Exhibit 'A' to the said bill, the said Hull became and was the absolute owner of the said premises, and in this: because the plaintiff does not represent the stockholders of the said company and could not ask that the said deed be set aside in their behalf.   And in this: Because the subdivision 'b' of the said section thirteen does not state any case for setting aside said conveyance to the said Hull, on the ground of inadequacy of price.   And in this: Because the ground of relief in subsections 'a' and 'b' of the said thirteenth section are inconsistent with each other, and inconsistent with the grounds for relief

attempted and imperfectly set up in sections fifth and sixth and seventh of the said bill of complaint."

The complainant also filed a cross assignment of error based upon the order sustaining the demurrer of the defendants to the original bill upon the ground stated therein.

*Bisbee & Bedell* and *Wilson & Swearingen,* for Appellants;

*Glen & Himes,* and *R. E. Gunby,* for Appellee.

SHACKLEFORD, J., *(after stating the facts.)*—We have copied in full in the foregoing statement the amended bill, 'the demurrers interposed thereto and the assignments of error predicated upon the order of the court overruling such demurrers, omitting only the formal parts of the several instruments. Our purpose in doing this is to show clearly just what points are presented to us for consideration and determination. As will be readily seen, all of such points are embraced within the general question as to whether or not the amended bill is sufficient to withstand the attack made upon it by the demurrers. That question we shall now undertake to answer, but without discussing the several assignments in detail.

It seems well to begin with the consideration of the proper construction to be placed upon section 2494 of the General Statutes of 1906, which is as follows:

"2494. (1981.) Instruments deemed mortgages.—All deeds of conveyance, obligations conditioned or defeasible, bills of sale or other instruments of writing conveying or selling property, either real or personal, for the purpose or with the intention of securing the payment of money, whether such instrument be from the debtor to the cred-

itor or from the debtor to some third person in trust for the creditor, shall be deemed and held mortgages, and shall be subject to the same rules of foreclosure and to the same regulations, restraints and forms as are prescribed in relation to mortgages."

Originally this section formed section 1 of an act approved the 30th day of January, 1838, found on page 12 of the Acts of 1838, reading as follows:

Section 1. Be it enacted by the Governor and Legislature Council of the Territory of Florida, That all deeds of conveyance, bills of sale, or other instruments of writing, conveying or selling property, either real, personal or mixed, for the purpose, or with the intention of securing the payment of money, whether such deed, bill of sale, or other instrument, be from the debtor to the creditor, or from the debtor to some third person or persons in trust for the creditor, shall be deemed and held as mortgages, and shall be subject to the same rules of foreclosure, to the same regulations and restrictions as now are, or may hereafter be prescribed by law, in relation to mortgage."

This act was amended by Chapter 525 of the Acts of 1853, found on page 104, reading as follows:

"An Act to amend the Laws now in force relating to Mortgages.

Section 1. *Be it enacted by the Senate and House of Representatives of the State of Florida in General Assembly Convened,* That all deeds, obligations, conditioned or defeasible, bills of sale, or other instruments of writing, made for the purpose, or with the intention of securing the payment of money, whether such instruments of writing be from the debtor to the creditor, or from the debtor to some third person, or persons in trust for the creditor, shall be deemed, and held as Mortgages, and shall be subject to the same rules of foreclosure, to the same regulations, restrictions, restraints and forms, as

are now, or hereafter may be prescribed by Law in relation to Mortgages; but in no case, shall the obsolete, and antiquated claim in favor of the Mortgagee to the right of possession of the property, specified in said Mortgage, or any part thereof, by reason of any alleged failure of payment, or Breach of Promise, or other default, be recognized or admitted in a Court of Justice in this State, either by Judge or Jury, until all other steps and forms prescribed by law for the foreclosure of Mortgages be complied with and observed.

Sec. 2. *Be it further enacted,* And declared, that a constructive possession, or possession in the eye of the Law, by the Mortgagee, shall not be allowed to impair, or bring in question, the actual, and for ages, the admitted right of possession of the Mortgagor, until deprived thereof by decree; that a Mortgage is, and shall be, held in our Courts a specific lien on property, thereon for a specific object, and in point of fact as well as law, the Mortgagee is incapable of acquiring possession until after decree of foreclosure, and then only by bidding, and out bidding all competitors in market.

Sec. 3. *Be it further enacted,* That all acts, or parts of Acts, conflicting with the true intent and meaning of this Act, be and the same are hereby repealed.

(Passed the House of Representatives, January 3, 1853. Passed the Senate, January 6, 1853. Approved by the Governor January 8, 1853.)"

This Chapter was brought forward, with certain modifications, into the Revised Statutes of 1892 as sections 1981 and 1982. Such section 1981 is the same as section 2494 of the General Statutes of 1906, which we have copied above, and such section 1982 is brought into the General Statutes as section 2495, which is as follows:

"2495. (1982.) Nature of a mortgage.—A mortgage shall be held to be a specific lien on the property therein

described, and not a conveyance of the legal title or of the right of possession."

The differences in the acts of 1828, 1853 and the sections of the Revised and General Statutes are obvious, so that no comment thereon is necessary.

These sections in their different forms have been before this court several times for construction. In McGriff v. Porter, 5 Fla. 373, it was held that "the act of January 30, 1838, was "intended to limit and restrict the operative force of certain classes of conveyances therein mentioned, and not to extend or enlarge the effect of others." As was said therein, "the act mentioned 'deeds of conveyance and bills of sale,' and although it uses the terms, or 'other instruments of writing,' yet these terms, upon a familiar rule of interpretation, must be taken to mean instruments *ejusdem generis,* of a kindred character to those which are specifically designated, and this is fully sustained by the description which is contained in the statute, which shows that it was designed to operate on those instruments alone which have the effect of 'conveying or selling property, real, personal or mixed, for the purpose or with the intention of securing the payment of money.'" This construction has been recognized, approved and followed in Chaires v. Brady, 10 Fla. 133, and Lindsay v. Matthews, 17 Fla. 575. In Hollingsworth v. Handcock, 7 Fla. 338, will be found a discussion and definition of the distinction or difference between a mortgage and a conditional bill of sale. In Smith v. Hope, 47 Fla. 295, 35 South. Rep. 865, it was held that "where parties intend a conditional sale rather than a mortgage the intention will be given effect. An instrument in form a conditional bill of sale, and alleged in a bill seeking to enforce it to be a conditional bill of sale, will not, upon a demurrer to the bill, be held a mortgage. If the circumstances under which it was given are such that it will be held in law a mortgage, but

these do not appear from the bill, they must be set up by plea or answer. A feature essential to a mortgage is an indebtedness which it is designed to secure. The exist-ence of this is not implied in a provision that a bill of sale shall be void if the grantors shall 'pay' a certain sum of money by a certain day. Payment of money does not necessarily imply a previous binding obligation to pay, but may be made as the recompense or equivalent for some present benefit, the procurement of which is optional with the prayer." It is true that in this last cited case a dissenting opinion was filed by Mr. Chief Justice TAY-LOR, in which the writer hereof concurred. This case came a second time before this court. See Smith v. Hope, 51 Fla. 541, 41 South. Rep. 69. The pleadings in the cited case, including the written instrument presented for con-struction, are so variant from the pleadings and written instrument in the instant case that such cited case throws but little light upon the question now presented. How-ever, as we see it, it makes practically no difference, so far as the instant case is concerned, whether we uphold the majority opinion or follow the dissenting opinion in the cited case, therefore we shall spend no time in discussing that point. Without meaning to question the correctness of either the reasoning used or the conclusion reached in Hollingsworth v. Handcock, *supra,* we would call atten-tion to the points of difference also existing in that case and in the instant case. It was held in Campbell Printing Press Manuf'g Co. v. Walker, 22 Fla. 412, 1 South. Rep. 59, that it was not the intention either of the act of 1838 or of 1853, both of which we have copied above, to give any other construction to an instrument of writing than the parties thereto intended. In Franklin v. Ayer, 22 Fla. 654, it was held that "courts of equity will, in pursuance of a wise and benign rule, in cases of doubt as to whether the parties intended the transaction as a mortgage or

conditional sale, hold it to be a mortgage." In addition to the cases already cited, the following decisions of this court dealing with the statute from different viewpoints will prove of service as showing the extent to which the court is willing to go in order to ascertain the real intention of the parties as to the instrument which may be in question and under what circumstances and how far parol evidence is admissible to show that an instrument which may on its face be an absolute deed of conveyance or bill of sale is in reality of such a nature that it must be "deemed and held" a mortgage and "subject to the same rules of foreclosure and to the same regulations, restraints and forms as are prescribed in relation to mortgages," in accordance with the provisions of such statute: Matthews v. Porter, 16 Fla. 466; Shear v. Robinson, 18 Fla. 379; Walls v. Endel, 20 Fla. 86; First National Bank of Florida v. Ashmead, 23 Fla. 379, 2 South. Rep. 657; Shad v. Livingston, 31 Fla. 89, 12 South. Rep. 846; Margarum v. J. S. Christie Orange Co., 37 Fla. 165, 19 South. Rep. 637; DeBartlett v. DeWilson, 52 Fla. 497, 42 South. Rep. 189, S. C. 11 Amer. & Eng. Anno. Cas. 311; Wylly-Gabbett Co. v. Williams, 53 Fla. 872, 42 South. Rep. 910. It is true that in the instant case we are not called upon to deal with any questions of evidence but only with questions of pleading, yet these cases are useful in showing the policy of this court. Another principle which may prove of service to us is that in passing upon a demurrer to the whole bill in a suit in equity, every presumption is against the bill, but it is also true that such a demurrer operates as an admission that all the allegations in the bill which are well pleaded are true, and a demurrer to the whole bill should be overruled, if the bill makes any case for equitable relief. Lindsley v. McIver, 51 Fla. 463, 40 South. Rep. 619, and authorities there cited; Holt v. Hillman-Southland Co., 56 Fla. 801, 47 South. Rep. 934.

This principle cannot be applied in its entirety for the reason that neither demurrer was interposed to the whole bill, one going only to the thirteenth paragraph and the other to all of the bill except such thirteenth paragraph. However, in so far as such principle is applicable, it will prove helpful to us. There is still another principle which it may be well to keep before us. In construing any written instrument, whether a deed of conveyance, a bill of sale, mortgage, contract or what not, the entire instrument must be considered in order to gather the real intent and true design of the makers thereof. To that end, all the different provisions of such instrument must be looked to and all construed so as to give effect to each and every of them, if that can reasonably be done. If clauses therein seem to be repugnant to each other, they must be given such an interpretation and construction as to reconcile them if possible, remembering that the intent is the principal thing to be regarded. If one interpretation, looking to the other provisions of the instrument and its general scope, would lead to an absurd conclusion, such interpretation must be abandoned and one adopted which will be more in accord with reason and probability. See Jacobs v. Parodi, 50 Fla. 541, 39 South. Rep. 833, and McNair & Wade Land Co. v. Adams, 54 Fla. 550, 45 South. Rep. 492, and authorities cited therein.

Taking up now for consideration the bill and the exhibit attached thereto and made a part thereof, and looking at the same in the light of the cited authorities, does the instrument of which such exhibit to the bill is a copy fall within that class of instruments contemplated by the statute so that it must be deemed and held a mortgage? That is the crucial question presented by the assignment of errors and which we are called upon to answer. Having copied the bill and exhibit in the prefatory statement to this opinion, we shall not undertake to set forth herein in

detail the allegations or provisions thereof but content ourselves with referring to such statement. Stated in a very succinct form, we find from such bill and exhibit that one Hiram W. Rowell made and entered into a contract with one Clarence A. Boswell for the purchase from such Boswell of certain described realty and personalty, which contract was assigned and transferred by Rowell to the Port Tampa Phosphate Company, a corporation, which corporation immediately entered into the possession of such property and became the equitable owner thereof, subject to the payment to Boswell of the balance of the purchase price, approximately twelve thousand dollars; that such property was acquired by such corporation for the purpose of establishing and operating a phosphate plant and also constituted its entire property; that immediately after taking possession thereof such corporation proceeded to complete and extend the phosphate plant which had been partially constructed and expended in so doing upwards of sixty thousand dollars; that afterwards such corporation, being pressed by the persons to whom Boswell had assigned his rights under the contract made with Rowell for the payment of the balance of the purchase price, applied to the defendant Joseph Hull, who is one of the appellants here, for "a loan of money with which to pay the said balance, together with a small amount of additional indebtedness then owed by the said Port Tampa Phosphate Company, and also certain other moneys that would be required by the said Port Tampa Phosphate Company to complete the said phosphate plant on the said premises;" that Hull was willing and "agreed to advance the said moneys," but was unwilling to accept a mortgage on such premises from such corporation because it had never acquired the legal title thereto and required that the deed of conveyance to such premises should be made direct to him, the said Hull, "so

30—Vol. 58.

as to secure him for the money then advanced and thereafter to be advanced by him for the completion of the said plant;" that for the reasons stated in the bill the board of directors of such corporation assented to the terms demanded by Hull, "upon his entering into an obligation to convey" such premises to such corporation upon being repaid the sum of money then advanced and the sums to be thereafter advanced by him, but that such proposition was never submitted by the board of directors to the stockholders of such corporation or assented to by them," although the said premises embraced and included all of the property and assets of the said corporation;" that in pursuance of such agreement Hull advanced the sum of $13,404.77 with which to pay the balance of the purchase price and that such premises were conveyed direct to Hull by the assignees of Boswell, who were then the owners thereof, and that contemporaneously therewith Hull executed and delivered to such corporation a written agreement, a copy of which is attached as an exhibit to the bill and made a part thereof; that after the execution and delivery of such deed and agreement on or about the 9th day of June, 1905, such corporation continued to remain in possession of such premises and to make improvements thereon until a petition in bankruptcy was filed against it in the United States District Court for the District of Massachusetts, under the laws of which State such corporation was incorporated and where it had its domicile, and on the 27th day of November, 1905, such corporation was duly adjudged a bankrupt by such court and the complainant, who is the appellee here, was on such date duly appointed as trustee of such bankrupt corporation and duly qualified as such on the 27th day of December, 1905; that, after the execution of such deed and agreement and prior to the time such corporation was adjudged a bankrupt and while it remained in pos-

session of such premises, Hull continued to advance money from time to time to such corporation, the exact amount being unknown to complainant but alleged to be approximately $12,000.00, all of which was applied by such corporation towards the extension and completion of the phosphate plant on such premises; that immediately upon the appointment of complainant as such trustee all the property of such corporation, including that described in the bill of which such corporation was in possession at the time of such adjudication and of such appointment and qualification of complainant as trustee, became vested in him as such trustee and he became entitled to the possession thereof, but that, after the appointment and qualification of complainant as such trustee, "the defendant, Joseph Hull, instituted an action of ejectment in the Circuit Court of the United States for the Southern District of Florida against one N. B. Childs and the said Port Tampa Phosphate Company, to which your orator was not a party, nor did he become a party, and in which no service was had upon the said Port Tampa Phosphate Company or any officer, agent or representative of the said Port Tampa Phosphate Company, and in which it did not appear, but in which, as your orator is informed and believes, the only service made was upon N. B. Childs, a deputy sheriff of Polk County, Florida, in possession of the personal property on the said premises under certain writs of attachment issued out of the Circuit Court of Polk County, Florida, and in the said proceeding in the Circuit Court of the United States for the Southern District of Florida to which neither the said Port Tampa Phosphate Company nor your orator were made, or became, parties, the defendant, Joseph Hull, on or about the 3rd day of March, A. D. 1906, secured a judgment by default and a final judgment purporting to award him possession of the said premises, and under the said judgment

the defendant, Joseph Hull, entered into the possession thereof."

It would seem that the foregoing synopsis of the allegations of the bill will be sufficient to enable us to answer the question now under consideration. Other allegations of the bill will be adverted to later. We must now look at the exhibit to the bill. We find that such instrument was signed by Hull as well as by the Port Tampa Phosphate Company by H. W. Rowell, its President. We pass over the informalities connected with the execution of such instrument which are readily apparent but there is no occasion to consider, since no point is attempted to be made thereon. However, see Margarum v. J. S. Christie Orange Co., 37 Fla. 165, 19 South. Rep. 637. We find, in brief, that such instrument contains a recital to the effect that whereas the Port Tampa Phosphate Company, under and by virtue of a certain resolution of its board of directors, had sold the property in question to Hull and caused the same to be conveyed to him by E. C. Stuart and C. G. Meminger, the assignees of Boswell, and whereas Hull had agreed to sell back and reconvey such property to the Port Tampa Phosphate Company, at any time within four months from the date thereof, upon the payment to him of the sum of $13,404.77" and such other and further sums of money which may have been advanced or paid out by the said Hull, in the improvement or operation of said property, together with a profit of sixteen per cent. (16%) on any such sums so advanced or paid out, in consideration thereof, Hull bound himself, his executors, administrators and assigns, upon such payment to him of the sums of money just set forth above, to convey such property to such corporation, the same being set forth and particularly described. Such instrument contains the following additional clause: "The Port Tampa Phosphate Company agrees that if it shall fail to exercise its

right to repurchase said property within the time prescribed, this contract shall forthwith become void and of non-effect, and the said Joseph Hull shall own said properties free from any claim or demand of the said Port Tampa Phosphate Company."

It will be observed that nothing whatever is said in this instrument as to the possession of such property or the right of possession. Is it not significant that the Port Tampa Phosphate Company continued to remain in possession of such property from the date of such instrument, the 9th day of June, 1905, until after it was adjudged a bankrupt in the month of November, 1905, and that Hull continued to advance money to it, which was applied toward the construction, extension and completion of the phosphate plant thereon? If the absolute legal title to such property became vested in Hull by the execution of the deed to him by Boswell's assignees, is it not a little singular that this instrument, with its rather peculiar phraseology, should have been executed contemporaneously with such deed and that nothing should be said therein about the possession or the right of possession? It will be observed from the description of the property in such instrument which forms an exhibit to the bill, that a portion thereof was personalty. As was said in Briggs v. Weston, 36 Fla. 629, text 633, 18 South. Rep. 852, text 853, "It is the rule, then, in this State that when it is shown in case of an absolute sale of personal property that the vendor has continued in possession of the property and the vendee has in two ways assumed possession of the same, the burden rests upon the latter to show that the former's possession is consistent with the deed, is unavoidable, temporary, or for the reasonable convenience of the purchaser." Also see authorities there cited, including prior decisions of this court, especially Holliday v. McKinne, 22 Fla. 153, wherein it was held that

"the retention of personal property by the vendor after a sale is *prima facie* evidence of fraud, and the evidence to rebut such presumption is an explanation of the retention by showing that it is consistent with the deed, or is unavoidable, or is temporary, or for the reasonable convenience of the owner." Also see Volusia County Bank v. Bertola, 44 Fla. 734, 33 South. Rep. 448. As to the retention of the possession of realty by the vendor it was held by this court in Neal v. Gregory, 19 Fla. 356, that "the retention of the possession of land after absolute sale accompanied with the exercise of unequivocal acts of ownership over it is a badge of fraud for it is not in the usual course of business and indicates a secret trust for the debtor. In case of such a sale and retention of possession accompanied by appropriation of the rents and profits and acts of ownership the burden of proof is upon the party asserting the existence of and payment of the consideration named in the deed, and claiming the benefits thereof to establish such facts." Of course, these cited cases were dealing with the rights of creditors, but if such a transaction as is set forth in the instant case would be lawful, even as to creditors, if deemed and held a mortgage, but illegal as to them, if held to be an absolute sale, that fact or principle should be considered. In a case of doubt, where the transaction is equivocal, the presumption is that the parties thereto had in contemplation what they could legally do and intended a lawful rather than an unlawful transaction. We should also bear in mind that the bill alleges that the property in question constituted the entire assets of the Port Tampa Phosphate Company and that the proposition of Hull was never submitted by the board of directors of such corporation to its stockholders. It would seem that a board of directors of a corporation have not the right or power to make a sale of the entire assets of the corporation, unless authorized so to

do by its stockholders. See 10 Cyc. 764 and 21 Amer. & Eng. Ency. of Law (2nd ed.) 863, 864, and authorities cited in notes. As we have already seen from the cited decisions of this court, in case of doubt the transaction will be held a mortgage. Gross inadequacy of the consideration is another test which may be applied in determining whether a transaction was intended as a mortgage or an absolute or conditional sale, especially when coupled with the financial embarrassment of the grantor. See 1 Jones on Mortgages, § 329; 27 Cyc. 972 and 1014; Russell v. Southard, 12 Howard (U. S.) 139. We would also refer generally to the discussion and reasoning in Flagg v. Mann, 9 Fed. Cas. No. 4847, which case was approvingly cited by this court in Stockton v. National Bank of Jacksonville, 45 Fla. 590, text 600, 34 South. Rep. 897, text 900; Campbell v. Dearborn, 109 Mass. 130, text 138 *et seq.;* Hassam v. Barrett, 115 Mass, 256; Plummer v. Ilse, 41 Wash. 5, 82 Pac. Rep. 1009. The respective counsel have cited a large number of authorities in their elaborate briefs dealing with these different points, but we deem it unnecessary to cite further authorities along this line in this opinion. Suffice it to say that, after having made a careful investigation of the authorities and after mature deliberation, we are constrained to the conclusion that, under the allegations of the bill, tested as they are by demurrer, the deed from Boswell's assignees to Hull taken in connection with the contemporaneous agreement executed by Hull and the Port Tampa Phosphate Company, must be deemed and held a mortgage, in accordance with the provisions of our statute, copied in full above.

We have not lost sight of the fact that the legal title to the property in question was never vested in the Port Tampa Phosphate Company, but that such corporation was only the equitable owner thereof, entitled to have the legal title vested in it by a proper conveyance upon the

payment of the balance of the purchase money.   However, before this was done, being pressed for payment of such unpaid balance by the holders of the legal title, such corporation applied to Hull for a loan, which Hull agreed to advance upon the condition that the holders of the legal title conveyed the property direct to him, which was done. Strictly speaking, then, the assignees of Boswell were the vendors and not the Port Tampa Phosphate Company, but such corporation, the equitable owner, was in possession and, *at its request,* the holders of such legal title conveyed it to Hull, while such corporation continued to remain in possession.   We fail to see the difference in principle between this transaction and what would have existed had such corporation taken the legal title in its own name from such vendors and then executed a conveyance to Hull, and are of the opinion that the authorities which we have cited are just as much in point in one instance as the other.   See Lindsay v. Matthews, 17 Fla. 575.   There is no question but that Stuart and Meminger, Boswell's assignees, became divested of the legal title by their conveyance to Hull, so that the contention as to their being either proper or necessary parties to this litigation cannot be seriously entertained.   The legal title, then took became vested in Hull, subject to the equitable ownership or title of the Port Tampa Phosphate Company.   However, such transactions as took place between Hull and such corporation, taken in their entirety, must be deemed and held a mortgage, as we have already seen, therefore, under the statute, "subject to the same rules of foreclosure and to the same regulations, restraints and forms as are prescribed in relation to mortgages."   As is also provided in the next succeeding statute, which we copied in full above, "a mortgage shall be held to be a specific lien on the property therein described, and not a conveyance of the legal title or of the right of posses-

sion." We also have a long line of decisions of this court construing this statute and holding in effect that "a mortgage is a specific lien on the land it covers, and a failure to comply with its conditions does not divest the mortgagor of the legal title, nor vest it in the mortgagee." Berlack v. Halle, 22 Fla. 236, S. C. 1 Amer. St. Rep. 185. We would also refer to the following cases: Brown v. Snell, 6 Fla. 741; McMahon v. Russell, 17 Fla. 698; Bush v. Adams, 22 Fla. 177, text 189; First National Bank of Florida v. Ashmead, 23 Fla. 379, 2 South. Rep. 657; Jordan v. Sayre, 24 Fla. 1, 3 South. Rep. 329; Seedhouse v. Broward, 34 Fla. 509, 16 South. Rep. 425; Coe v. Finlayson, 41 Fla. 169, 26 South. Rep. 704; Wylly-Gabbett Co. v. Williams, 53 Fla. 872, text 935, 42 South. Rep. 910, text 929.

By virtue of his appointment and qualification as trustee in bankruptcy of the Port Tampa Phosphate Company the complainant succeeded to and acquired all the title and rights of such corporation of, in and to the property in question. It is obvious, however, from the allegations of the bill that a court of law could not afford complainant a plain, adequate and complete remedy, so as to render a resort to a court of chancery unnecessary and improper. See Barnett v. Hickson, 52 Fla. 457, 41 South. Rep. 606. As we have seen, neither the complainant nor the Port Tampa Phosphate Company ever was vested with the legal title to the property in question. This fact clearly differentiates the instant case from Brown v. Snell, 6 Fla. 741; Endel v. Walls, 16 Fla. 786; Berlack v. Halle, 22 Fla, 236, S. C. 1 Amer. St. Rep. 185; Ashmead v. Wilson, 22 Fla. 255, all of which are cited and relied upon by appellants to support their contention that the proper remedy for the complainant to pursue was an action at law. Taking in connection with the absence of the legal title in the complainant the allegations in the bill as to the manner in

which Hull acquired the possession of such property and the conveyance by him to the Prairie Pebble Phosphate Company and the mortgage executed by it to the Savannah Trust Company, and the circumstances under which such conveyance and mortgage were executed, all of which were admitted by the demurrer, it is perfectly obvious why neither an action of ejectment nor any other action at law could give the complainant adequate relief. We see no occasion for dwelling upon this point or citing further authorities. We think that it is also apparent from such allegations that both such Prairie Pebble Phosphate Company and Savannah Trust Company were proper, if not necessary, parties defendant.

We see no useful purpose to be accomplished by a further prolongation of this opinion. Although we have declined to discuss the different errors assigned in detail, we have considered each and every of them and have given all the pleadings and briefs of counsel close study. We appreciate the full and elaborate manner in which the points have been presented to us by the respective counsel, including the copious citations of authorities, but we do not think it advisable to enter upon a more detailed discussion of the points raised. What may develop in the further progress of the case we do not know. We find no reversible error in the interlocutory order overruling the two demurrers to the bill, therefore the same must be affirmed.

WHITFIELD, C. J., and COCKRELL, J., concur.

TAYLOR, HOCKER and PARKHILL, JJ., concur in the opinion.