[No. 5904. Decided December 15, 1905.]

## J. W. PLUMMER et al., Appellants, v. GEORGE ILSE, Respondent.[1]

MORTGAGES—ABSOLUTE DEED AS A MORTGAGE—ESCROW—DELIVERY UPON DEFAULT—CUTTING OFF EQUITY OF REDEMPTION. Where money was borrowed for the purpose of paying a balance due on the purchase price of premises, and a note and mortgage on the property was then given to the lender, and as part of the same transaction a deed was made to the lender and placed in escrow under an agreement that the same should be delivered in case the note was not paid when due, the deed must be held to be a mortgage although the evidence tends to show that the parties intended otherwise; since it was such in its inception, the relation of debtor and creditor existed, and the equity of redemption cannot be cut off by such an agreement as part of an original transaction between parties under no previous contractual relation.

Appeal from a judgment of the superior court for Spokane county, Kennan, J., entered March 21, 1905, upon findings in favor of the defendant, after a trial on the merits before the court without a jury, in an action to reform a deed as a mortgage and for redemption. Reversed.

1Reported in 82 Pac. 1009.

*L. H. Prather,* for appellants.

*Peacock, Wells & Ludden,* for respondent.

CROW, J. — This action was commenced by appellants, J. W. Plummer and Amanda Scofield, against respondent, George Ilse, for the purpose of having a certain warranty deed adjudged to be a mortgage, and for the purpose of making redemption. From a judgment of dismissal, this appeal has been taken.

No statement of facts has been certified, but this appeal is prosecuted on findings made by the trial judge, which appellants contend do not support the final judgment, but authorize a decree in their favor. It is not necessary to copy such findings at length in this opinion. From them it appears that, on May 2, 1904, appellant Amanda Scofield being indebted for $500, balance of purchase money then due on section 13, township 39, north of range 42 east, W. M., in Spokane county, she and appellant J. W. Plummer borrowed of respondent George Ilse said sum of $500 to pay the same, and executed and delivered to respondent their promissory note of that date for said sum, payable in six months, with interest from date at the rate of one per cent per month; that, to secure the payment of said note, appellants executed and delivered to respondent their certain mortgage deed, of even date therewith, the same being in ordinary form, and containing conditions for foreclosure and sale for nonpayment and for the application of the proceeds of such sale to the discharge of the indebtedness arising on said note, and to disbursements and costs including an attorney's fee of $100; that, at the time of the execution and delivery of said note and mortgage, appellants also made and executed their certain warranty deed for said land to respondent, and placed the same in escrow with one J. W. Graves, agent of appellants and also of respondent, with instructions that, in the event appellants should make default on said note according to the conditions of said note and

mortgage, said deed was to be delivered to respondent in full payment and satisfaction, to save appellants from further costs and attorneys' fees on foreclosure, it being understood that respondent should accept said deed; that, after the execution of said note and mortgage, said J. W. Graves, who acted as agent for all the parties in negotiating said loan, informed appellants that respondent would not make said loan unless appellants would also execute said deed and deliver the same to said Graves; that thereupon said note, mortgage and deed were delivered to said Graves, who forthwith paid to appellants said $500, borrowed from respondent; that at the time of said delivery of said instruments to said Graves, he, the said Graves, signed and delivered to appellants a written instrument reading as follows: "I hereby agree to hold the deed until the note and mortgage shall become due and past due and then the deed shall be delivered to the mortgagee;" that appellants made default on said note when the same became due; that said deed was then delivered to and accepted by respondent, in full satisfaction of said note and mortgage, and of all costs, attorney's fees, and charges due respondent; that, at the time of the delivery of said deed, respondent delivered to said Graves a release of said mortgage, together with said mortgage and the note thereby secured; that, prior to the delivery of said deed, said Graves informed appellants that, unless said mortgage was promptly paid when due, he would be compelled to deliver said deed to respondent, who had also informed appellants that said $500 and interest would have to be promptly paid when due; that said deed was not at any time in the possession of respondent until delivered by said Graves after the maturity of said note; that said deed was placed in escrow with said Graves, with full knowledge and understanding by appellants that the same was an absolute warranty deed, and that the same should be delivered to respondent on default in payment, and would convey a fee simple title; that re-

spondent received said deed in full settlement and satisfaction of said note and mortgage, and of all costs, charges, interest, taxes, and attorney's fees, and is now the owner of said real estate in fee simple; that on November 14, 1904, appellant Plummer, for himself and for said appellant Scofield, went to respondent's place of business for the purpose of paying said loan, and with sufficient money to pay the same, but respondent was absent therefrom, and appellant could not then make any tender, and that on said November 14, 1904, respondent, claiming said deed to be an absolute conveyance, placed the same of record. Other facts were found, but we have stated all that are material to the determination of the only question involved, viz., whether said deed was a mortgage or an absolute conveyance of the fee simple title.

The first question to be determined is, What relations existed between appellants and respondent, at the date of the completion of the original transaction, and as the result thereof? It appears that the giving of the note and mortgage, and the execution of the deed, and the placing of the deed in escrow, were one transaction. There is no question but that an interest-bearing loan was then made, and that the relation of debtor and creditor and also mortgagor and mortgagee then existed between the parties, and continued to exist for the period of at least six months thereafter. True, the deed absolute in form was executed and placed in escrow, but we do not think this changed the relation of the parties from that of mortgagor and mortgagee to that of vendor and vendee. The deed must be construed to have been, at the time of its execution, either a mortgage or a conveyance making a conditional sale, according to all the surrounding facts and circumstances, as they then existed. In deciding whether it was a mortgage, the principal test to be applied is, whether the relation of the parties towards each other of debtor and creditor continued after the execution of the deed. 20 Am. & Eng. Ency. Law (2d ed.), 940. In *McNamara v. Culver,*

22 Kan. 661, the court, speaking through Brewer, J., now a member of the supreme court of the United States, said:

"The test is the existence or nonexistence of a debt. And equity looks behind the form to the fact. If the transaction was intended as a loan, if there remains a debt for which the conveyance is only a security, and the collection of which may be enforced independent of the security, equity will hold it a mortgage, no matter whether the transaction is evidenced by one or two instruments."

Applying this test, the deed executed by appellants must be held to have been a mortgage. Did it at any subsequent time cease to be a mortgage and become an absolute conveyance of the fee simple title? "Once a mortgage, always a mortgage," is a well-established rule in equity. A deed intended as a mortgage will remain a mortgage until the equity of redemption is cut off, and the parties cannot by stipulation, however express or positive, render it anything else. 4 Current Law, 683; Pingrey, Mortgages, § 87; 1 Jones, Mortgages (6th ed.), § 340.

"The doctrine has been firmly established from an early day that when the character of a mortgage has attached at the commencement of the transaction, so that the instrument, whatever be its form, is regarded in equity as a mortgage, that character of mortgage must and will always continue. If the instrument is in its essence a mortgage, the parties cannot by any stipulations, however express and positive, render it anything but a mortgage, or deprive it of the essential attributes belonging to a mortgage in equity. The debtor or mortgagor cannot, in the inception of the instrument, as a part of or collateral to its execution, in any manner deprive himself of his equitable right to come in after a default in paying the money at the stipulated time, and to pay the debt and interest, and thereby to redeem the land from the lien and encumbrance of the mortgage; the equitable right of redemption, after a default is preserved, remains in full force, and will be protected and enforced by a court of equity, no matter what stipulations the parties may have made in the original transaction purporting to cut off this right." Pomeroy, Equity Jurisprudence (2d ed.), § 1193.

It appears that appellants owed to others not parties here some unpaid purchase money, and that they desired to, and did, effect a loan to pay the same; that respondent, as a condition for making such loan and taking their note and mortgage, at the time insisted on the deed being placed in escrow. If he did not make a loan, but was purchasing the real estate, why did he take the note and mortgage? The only possible answer is that it was his intention to take a note and mortgage as evidence of, and security for, the loan, and at the same time, and as a part of the same transaction, to enter into some simultaneous agreement that would have the effect of destroying or cutting off the mortgagor's equitable right of redemption. In 2 Washburn, Real Property (6th ed.), § 998, the text reads as follows:

"If the transaction between the parties be in fact a mortgage, its character cannot be affected or changed by any agreement entered into at the time between them as to redemption or the other incidents of a mortgage. The right of redemption attaches as an inseparable incident created by law, and cannot be waived by agreement. A mortgage, moreover, depends for its vitality upon the law in force at the time of its execution. The doctrine universally applicable is, if once a mortgage, always a mortgage. Nor can it be made otherwise by any agreement of the parties made at the time of the execution of the deed, nor upon any contingency whatever. Equity will not admit of a mortgagor embarrassing or defeating his right to redeem the estate by any agreement which he may be induced to enter into in order to effect a loan."

Equity regards it as impossible for contracting parties, in a single transaction, by the execution of one or more written instruments to create the relation of debtor and creditor or mortgagor and mortgagee, and at the same time to provide for a conditional sale, or the destruction of the mortgagor's right to redeem after default. The deed having been a mortgage in its inception, appellants are still possessed of their equitable right to redeem, unless such right has been termi-

nated either by foreclosure or some subsequent and independent valid agreement between the parties, neither of which has occurred.

Respondent contends that the findings of the trial court show the deed was not a mortgage, but was intended by the parties to become absolute in the event of nonpayment of the debt, and contends that such finding sustains the final judgment herein. It is true that substantially such a finding was made, but we think it can have no controlling effect here, for the reasons (1) that it is more in the nature of a conclusion of law than a finding of fact; and (2) that, even though it be a finding of fact, it is inconsistent with other facts necessarily found, from the nature and terms of the several instruments executed. In 2 Washburn, Real Property (6th ed.), § 990, the author uses the following language:

"On the other hand, if the transaction of the parties actually constitutes a mortgage in terms, it will have that effect, though not so intended by them when it was done. Thus, where one made a deed, and the grantee gave back a bond to reconvey on certain conditions, it was held that, though not intended thereby to create a mortgage, it was one in fact."

Where the transactions actually occurring between the parties are clearly of such a nature as to show a deed absolute in form to have been a mortgage, courts of equity will construe it as such, even though the parties may have apparently intended otherwise. The reason of this rule is that courts of equity are ever zealous to preserve to a mortgagor his equitable right of redemption, and to prevent him from entering into any agreement at the time of the execution of the original mortgage having the effect of nullifying such right. If the mortgage exists, the equity of redemption necessarily exists as incidental thereto. Therefore, in passing upon the facts found, we must, in applying these equitable principles, hold the deed to have been a mortgage, although there may have been some seeming intention on the part of

one or both of the contracting parties that it should be otherwise considered.

Respondent has cited a number of authorities to support his contention that the deed was in fact an absolute conveyance; but in all of his citations it appears from the facts involved either (1) that, at the time of the execution of the deed, a previous contractual relation of mortgagor and mortgagee, or creditor and debtor, antedating the deed, had existed between the parties and was then terminated; or (2) that, at the time of the execution of the deed, no loan was made by the grantee to the grantor, nor did the relation of debtor and creditor arise between them. The case at bar does not comply with either of these conditions, and we have been unable to find any authority which would justify us in holding the deed here given as a part of the original transaction to be other than a mortgage; nor have counsel cited us to any authority which would warrant such holding.

The honorable trial court erred in holding the deed to have been an absolute conveyance. The judgment is reversed, and the cause remanded with instructions to enter a decree adjudging the deed to be a mortgage. Further proceedings will also be taken by the superior court for the purpose of ascertaining the amount due upon said mortgage, and necessary to be paid by appellants on redemption.

Mount, C. J., Root, Dunbar, Hadley, Fullerton, and Rudkin, JJ., concur.