ISRAEL J. COHN *vs.* THE BRIDGEPORT PLUMBING SUPPLY
COMPANY, INC., ET ALS.

Third Judicial District, Bridgeport, April Term, 1921.

WHEELER, C. J., BEACH, GAGER, CURTIS and BURPEE, Js.

The maxim, elementary in the law of mortgages, of "once a mortgage
always a mortgage," is an essential corollary of the doctrine of
the existence of an equity of redemption in the mortgagor; for
without it that doctrine could, by contract, be shorn of all efficiency.

The maxim is applied not only to the original mortgage contract, but
also to render unenforceable any subsequent executory contract
by which the mortgagor attempts to bind himself so that if he
does not pay his debt by a certain time in the future he will forfeit
all right to the mortgaged property.

This rule does not operate to prevent a present release of the equity
of redemption by the mortgagor to the mortgagee for a valuable
consideration, when done voluntarily and in the absence of fraud
and undue influence.

In the present case it appeared that one H, in order to secure advances
he had agreed to make for the completion of a building, took from
certain of the mortgagees of the premises an assignment of their
mortgage interests. H not having been paid, the parties entered
into an agreement whereby H was to refrain for a stated period
from taking any steps to realize upon his security and from at-
tempting to hold the original mortgagees as indorsers of the notes,
and if he was not paid at the end of such period, then H was, *ipso
facto*, to be and become the owner of the notes and mortgage, and
the original mortgagees were thereafter to have no interest in them.
It was further agreed that the original mortgagees should execute
quitclaim deeds of their interests and that these deeds should be de-
livered to one M, in escrow, to be delivered to H, provided he
should not have been paid by the agreed date. H duly fulfilled his
promise, but the quitclaim deeds were in fact never executed.
*Held* that the assignment to H constituted a mortgage of a mort-
gage, and the maxim, "once a mortgage always a mortgage,"
operated to prevent the enforcement of the supplemental agree-
ment and to preserve to the original mortgagees an equity to redeem
their mortgage interest from H and that this was true notwithstand-
ing that this case was a mortgage not of land but of another mort-
gage, and that the parties had agreed upon the delivery of release
deeds in escrow.

Argued April 13th—decided November 30th, 1921.

SUIT to foreclose a mortgage of real estate and for other relief, brought to the Superior Court in Fairfield County and referred to a committee who heard the evidence and reported the facts; the court, *Maltbie, J.*, accepted the report and rendered judgment in favor of the defendant corporations, allowing them to redeem the mortgage sought to be foreclosed, and from this judgment the plaintiff appealed. *No error.*

*Henry E. Shannon,* for the appellant (plaintiff).

*Thomas M. Cullinan* and *Louis A. Kornblut,* for the appellees (defendants).

GAGER, J.   One Whitman was engaged in the construction of an apartment house.   Prior to the transactions out of which this action arises, the premises had become subject to two mortgages amounting to $65,000.   On June 6th, 1918, Whitman owed the defendant, The Bridgeport Plumbing Supply Company, Incorporated, $5,000, as evidenced by his note, and on said day he owed the defendant, The Eastern New York Marble Company, Incorporated, $5,500, evidenced by two notes, one for $4,669, and one for $831; on June 6th, Whitman mortgaged the premises in question to the Supply Company and the Marble Company, to secure these debts.   On June 6th, immediately after giving this mortgage, Whitman conveyed his equity in the premises to the defendants Cohn and McManus, as trustees under a trust agreement signed by Whitman and the trustees and providing, among other things, that the trustees should take possession of the premises, complete the construction of an unfinished building thereon, receive the income therefrom and pay the obligations, including taxes, interest on the mortgage notes and instalments on principal

when due, with power to sell and to reconvey the premises when the three above-mentioned notes were satisfied. On July 24th, 1918, the trustees, Cohn and McManus, the Marble Company and the Plumbing Company, entered into an agreement with one Haflich, by which Haflich agreed to guarantee certain amounts or advance cash for the completion of the apartment building, to an amount not exceeding $6,500. On July 19th, 1918, and in anticipation of the agreement of July 24th, 1918, the Marble Company transferred to Haflich its note of $4,669, secured by mortgage, as collateral security for his guarantees and advancements in the completion of the building, and the Plumbing Supply Company, on July 24th, 1918, also transferred its note of $5,000, secured by mortgage, as security for such guarantees and advancements, the notes and mortgage to said companies being those of June 6th, 1918, given by Whitman as above described. The transfers to Haflich were in form out-and-out transfers, but the transfers and the indorsements of the notes were actually mortgages to said Haflich to secure him upon his advancements.

Haflich thereupon undertook to carry out the terms of his agreement of July 24th, 1918, and advanced moneys and paid bills, and, by January 8th, 1919, had incurred obligations under this agreement amounting to $4,964.76, which included a bonus of $827.46. On January 8th, 1919, the trustees mortgaged their interests in the premises described in the trust agreement, to Haflich, to secure the payment of the $4,964.76 liabilities incurred by him in carrying out the trust agreement. No part of this sum was repaid. Between January 8th, 1919, and March 6th, 1919, the attention of the defendant companies was called by the plaintiff, then acting as attorney for Haflich, to the financial situation, and several conferences were held,

but the parties were unable to make any arrangement by which the necessary money could be procured to pay the defendant Haflich for his obligations and advancements, or to pay an instalment of one of the earlier mortgages then coming due.   On March 7th, 1919, the matter of the Haflich claim was taken up by the representatives of the Plumbing Supply Company, the Marble Company, the trustees, and Haflich, who at that time was represented by the plaintiff. They finally entered into the following oral agreement: the defendant companies were to endeavor. to effect a sale of the premises, or a sale of the securities which they had turned over to Haflich as collateral security, or in some manner, if possible, to arrange to pay the obligations to Haflich on the premises in which they were concerned, so that on or before April 21st, 1919, they might repay to Haflich the sum of $4,964.76, with interest thereon at the rate of six per cent per annum from the 8th day of January, 1919, to the date of payment, and also, if possible, realize on their own investment in the building on account of labor and material furnished by them in its construction.   If the defendant companies did not succeed in some way in raising the funds with which to pay said sum to said Haflich, and if they failed to pay said sum to him on or before April 21st, 1919, then the said Haflich was *ipso facto* to be and become the owner of the notes and mortgage that had been assigned to him as collateral security, and Haflich would thereafter hold said notes and the mortgage of June 6th free from any agreement to hold the same as collateral security, and the defendant companies would have no further interest in said notes or the mortgage.   Upon the making of this agreement, Haflich agreed to refrain from taking any steps to foreclose or realize upon his securities until April 22d, 1919, and agreed

that if said companies should fail, on or before April 21st, 1919, to make said payment to Haflich, he would not seek to hold either of the companies on any claimed liability for its indorsement on either of said notes. It was also agreed that this agreement should be reduced to writing, and that proper quitclaim deeds should be prepared to be signed by said companies, which should be held by McManus, one of the trustees, until April 22d, 1919, when, if the defendant companies had paid Haflich's claim, he would return the deeds to the companies, otherwise he would deliver them to Haflich; and Haflich agreed that if he was paid on or before April 21st, 1919, he would release his interest in the notes and mortgage that had been assigned to him as collateral. The quitclaim deeds referred to were never executed by the defendant companies. Haflich carried out his part of the agreement of March 7th, and the defendant companies failed to pay Haflich on or before April 21st, 1919, the sums then due Haflich for the completion of the building, and have never paid any of said money to him. On April 28th, 1919, Haflich transferred to the plaintiff the notes and mortgages which the defendants had, on July 19th, 1919, and July 24th, 1919, transferred to him as security for the obligations to be incurred by him in completing the building, and on April 28th, 1919, said Haflich transferred and conveyed to the plaintiff the note for $4,964.76 and the mortgage given to him by the trustees to secure the same, dated January 8th, 1919. On August 2d, 1919, Whitman, the original owner and mortgagor, by quitclaim deed transferred his equity in the premises to the plaintiff.

With the cardinal facts as above stated, the plaintiff—claiming to be the owner of the Whitman mortgage of June 6th, 1918, to the defendants, the Plumbing Supply Company and the Marble Company—

brought his action of foreclosure against the trustees and said companies to foreclose the mortgage of June 6th, 1918, against the trustees and the defendant companies. The defendant companies, by cross-complaint, set up the transfer of the Whitman mortgage of June 6th, 1918, to Haflich as security under the trust agreement, the subsequent mortgage by the trustees to Haflich to secure the same indebtedness, and the assignment by Haflich to the plaintiff of the trustees' mortgage to Haflich of January 8th, 1919, and the Whitman mortgage to the defendants of June 8th, 1918, and claimed, in substance, the right to redeem the trustees' mortgage to Haflich, and from any subsequent valid claims which the plaintiff might hold, and, upon such redemption and assignment by the plaintiff to them, to be subrogated to the plaintiff's rights under the trustees' mortgage to Haflich, assigned to the plaintiff, and claimed a foreclosure of the Whitman mortgage of June 6th, 1918. In the reply and answer to the cross-complaint, the plaintiff set up the agreement of March 7th, 1919, and made the claim that, by reason of the failure of the defendants to make payment under said agreement, the defendants' notes and mortgage to Haflich became the absolute property of said Haflich, and were subsequently by him transferred to the plaintiff.

The foregoing statement is not exhaustive of the relations between the parties, nor does it cover all of the points which were covered by the decree ultimately rendered in favor of the defendants. It is unnecessary to go in further detail into the facts, because it is admitted by the appellant that the case, so far as any complaint is made in the reasons of appeal, really turns upon the validity of the agreement of March 7th, 1919. An examination of the essential facts discloses that on March 7th, 1919, Haflich was mortgagee under two

mortgages: first, the mortgage given by the trustees to him to secure him for expenses incurred in the completion of the building; and second, under the prior mortgage given to him by the Marble Company and the Plumbing Supply Company to secure the same claims. This latter mortgage, by the defendants to Haflich, was a mortgage of a mortgage; that they call it collateral security is immaterial; it was a transfer of the legal title of the defendants in their original Whitman mortgage to Haflich, and gave him the rights of a mortgagee therein. His rights were no greater because it was a mortgage of a mortgage than they would have been under an original mortgage of the land itself. The method of ultimately realizing differed somewhat, but the nature of Haflich's interest was not changed; and we regard it as clear that at the time of this agreement of March 7th, Haflich is to be treated as a mortgagee of the defendants, though the subject-matter of the mortgage was itself a mortgage; and the contract of March 7th is to be examined from the point of view of a contract between mortgagor and mortgagee, by which, at some subsequent time, upon the failure of the mortgagor to do certain things, his right to redeem should cease and his equity of redemption be lost. It is to be noted that the contract of March 7th is not a contract which then and there effects any change in the relation of the parties, or in any manner affects the rights and liabilities of the parties as mortgagor and mortgagee. It is not a settlement at that time and a termination of the mortgage relationship. The debt to Haflich is to remain a debt until the 21st of April; his right in the Whitman mortgages is, until the 21st of April, that of a mortgagee only; and the purpose of the contract is to bring about the termination of the security relationship without any contract of the parties coincident with the time of termination, and differs

in no respect from an agreement inserted in an original mortgage providing for the forfeiture of the equity of redemption upon failure to make payment according to contract. As between the defendants and Haflich, to whose rights the plaintiff succeeds, it is an original mortgage corresponding in substance to a mortgage by deed absolute in form, for it appears from the finding that there was simply a transfer of their interest in the mortgage by the defendants to Haflich, and that is all that the record would show; but the agreement between them, as indicated by Haflich's agreement of July 24th, 1918, under which Haflich undertook to complete the building, was that the notes and mortgage should be held as collateral, and, the transfer being by legal conveyance, there is no question as to the existence of the mortgage relationship with all its incidents; and we think the plaintiff in his brief is quite correct in the statement that, so far as this appeal is concerned, the real question is as to the validity of this attempt by an executory agreement to create a forfeiture of the equity of the redemption by the defendants in the Whitman mortgage of June 6th, 1918, as the result of nonpayment of the debt secured within a limited time. Such a contract is void.

Considerable discussion was had by the trial court in its memorandum, and by counsel in their briefs, with reference to the consideration for the contract of March 7th. This would be relevant on the hypothesis that this were an agreement for the immediate termination of the mortgage relationship and the fairness and freedom from oppression and from undue advantage taken by the mortgagee, Haflich, were under examination, as in the case of a completed transaction intended, in the very time of it, to terminate the mortgage. But this is not the case, for the mortgagor companies never carried out the contract or executed

the necessary deeds to transfer their interest as mortgagors to Haflich, nor was it intended that the contract should become effective until after the time limited in the contract for the payment of the debt to Haflich. The contract must stand upon what is expressed in the agreement to be the *ipso facto* element, where it says that if the defendant companies should not pay, said Haflich was *ipso facto* to be and become the owner of the notes and mortgage, and would thereafter hold said notes and mortgage free from any agreement to hold the same as collateral security, and the defendant companies would have no further interest in the notes or the mortgage. In other words, the operative fact to bring the agreement into play as effective to release the equity of redemption by the companies, was the mere nonpayment within a limited time of the debt secured by the mortgage. This view of the contract, we think, justifies the conclusion, or one of the conclusions, drawn by the trial court, that the principle by reason of which the release of an equity of redemption by a mortgagor to his mortgagee is disregarded, applies in this case, and is independent of the question of consideration. This principle is expressed in the well-known maxim, "Once a mortgage always a mortgage." It is unnecessary at this date to discuss in detail the origin and purpose of the maxim, further than to say that it is an essential corollary of the doctrine of the equity of redemption, without which the doctrine could, by contract, be shorn of all efficiency. The maxim is elementary in the law of mortgages. *French* v. *Burns*, 35 Conn. 359, 363, and the cases cited there; *Pritchard* v. *Elton*, 38 Conn. 434; 3 Pomeroy's Equity Jurisp. (3d Ed.) § 1193; 2 Swift's Dig. p. 186. As ordinarily stated, the maxim is applied to the original mortgage agreement; for instance, in Pomeroy's Equity Jurisp, § 1193, the language is: "If the instru-

ment is in its essence a mortgage, the parties cannot by any stipulations, however express and positive, render it anything but a mortgage, or deprive it of the essential attributes belonging to a mortgage in equity. The debtor or mortgagor cannot, in the inception of the instrument, as a part of or collateral to its execution, in any manner deprive himself of his equitable right to come in after a default in paying the money at the stipulated time, and to pay the debt and interest, and thereby to redeem the land from the lien and encumbrance of the mortgage."

But the benefit of the doctrine as applied to original agreements is equally required in the case of subsequent agreements relating to the extinguishment of the equity by mere failure to pay the debt. The situation is well explained in the relatively recent (1912) case of *Holden Land & Live Stock Co.* v. *Inter-State Trading Co.*, 87 Kan. 221, 227, 123 Pac. 733, L. R. A. 1915B, 492: "It is often said that after the execution of a mortgage the mortgagor may release to the mortgagee his 'equity of redemption'—using the term to denote his right to redeem after his default. . . . What is meant, however, as is shown by an examination of the cases cited in support of such statements, is merely that the mortgagor may, at any time after the execution of the mortgage, sell to the mortgagee outright all his interest in the property, by a conveyance operating at once, and in that sense release his right to redeem. But he cannot, even after the mortgage has been made, bind himself by an agreement that if he does not pay his debt by a certain time in the future he will forfeit all right to the property. The recognition of such a right in a few cases, of which *Bradbury* v. *Davenport*, 120 Cal. 152, 52 Pac. 301, is an example, seems to result from a failure to note the distinction referred to. Considerations of public policy forbid

the enforcement of a contract made by the borrower at the inception of his loan, that he will forfeit his interest in the property he offers as security if he fails to meet his obligation promptly; the same considerations apply with equal force where he makes a like contract upon the renewal of the loan or an extension of the time of its payment. To hold otherwise would be to deprive of the benefits of the rule those most in need of its protection. If at any time after the execution of a mortgage, the mortgagee could, by an extension of the time or upon any other new consideration, obtain from the mortgagor a valid agreement that if he did not pay the debt in full by a certain date he should forfeit the entire security, then virtually the ancient common-law mortgage would be still in vogue, its rigors unrelieved by any equity of redemption. The modern tendency is to extend rather than to contract the scope of equitable relief against forfeitures." In White & Tudor's Leading Cases in Equity (H. & W.) note, p. 1984, it is said: "The maxim, once a mortgage always a mortgage, does not cease to be applicable on the execution of the instrument, but will, on the contrary, invalidate a subsequent agreement tending to preclude the exercise of the right of redemption." In *Batty* v. *Snook*, 5 Mich. 231, 239, it is said: "The mortgagor may release the equity of redemption to the mortgagee for a good and valuable consideration, when done voluntarily, and there is no fraud, and no undue influence brought to bear upon him for that purpose by the creditor. But it cannot be done by a contemporaneous or subsequent executory contract, by which the equity of redemption is to be forfeited if the mortgage debt is not paid on the day stated in such contract, without the abandonment by the court of those equitable principles it has ever acted on in relieving against penalties and forfeitures."

The point of the agreement providing for the execution by the defendant companies of a quitclaim deed to Haflich of their interests in the Whitman mortgage to them, and the deposit of the quitclaim in escrow to be delivered on nonpayment of the debt, was quite immaterial, for in the first place the deeds never were executed, and in the second place had they been executed and placed in escrow, they would have been utterly void for the purpose of destroying the equity of redemption or transferring an unencumbered title to Haflich. In the case of *Holden Land & Live Stock Co.* v. *Inter-State Trading Co.*, 87 Kan. 221, 123 Pac. 733, the head-note states this point as follows: "An agreement by a mortgagor that he will forfeit all interest in the mortgaged property if he fails to pay the debt secured by a fixed time will not be enforced, although made after the execution of the mortgage." In this case a quitclaim deed had been deposited in escrow, pursuant to an agreement made subsequent to the mortgage, to be delivered to the mortgagee on the failure of the mortgagor to pay the debt within a specified time, and it was held that the delivery of this deed did not divest the mortgagor's equity of redemption. See also *Plummer* v. *Ilse,* 41 Wash. 5, 82 Pac. 1009, 2 L. R. A. (N. S.) 627. This was the case of a release deed from the mortgagor to the mortgagee, executed at the time of the mortgage and to be delivered to the mortgagee upon failure to pay the debt within the time limited.

We hold that the agreement of March 7th—quite independently of the consideration and of its oral character, as to which we say nothing—by virtue of which the nonpayment of the debt at a certain date was to work a forfeiture of the equity, was void, as it would have been if contained in the original transaction by which the mortgage to the defendant companies

was turned over to Haflich as security, and that the right of redemption of the mortgagees under the Whitman mortgage, from the claims of Haflich, remained in the defendant companies and has never been released or discharged through the operation of the contract of March 7th, and that the rights of the defendant companies to redeem from Haflich and from any subsequent valid incumbrances, and to foreclose their own mortgage, remain in as full force after the time limited for payment by the contract of March 7th as before. The plaintiff had full knowledge of all the facts, and has no greater rights arising from this contract than Haflich. The rights of Haflich, as mortgagee of the defendant companies and subsequent mortgagee of the trustees, the court recognized and enforced by the decree in favor of the defendants upon the cross-complaint, and apparently to the satisfaction of the plaintiff, as no reason of appeal reaches beyond the validity of the contract of March 7th.

The features of this case, other than the validity of the contract of March 7th, raise a somewhat complicated situation with reference to the adjustment of the equities of the various parties after the invalidity of the contract of March 7th has once been determined; but the appeal does not raise any such questions, the only question being whether the plaintiff, as the result of the agreement of March 7th and the subsequent transfer from Haflich, had become the unconditional owner of the mortgage of the defendant companies transferred to Haflich as security.

There is no error.

In this opinion the other judges concurred.