[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.]
MEMORANDUM OF DECISION
This is an action to foreclose a mortgage from the defendants Salcoy Corporation and Gregory Coyle to the plaintiff, Northeastern Capital Corporation. Underlying the mortgage is a note from the CT Page 1098 defendants to the plaintiff herein in the amount of two hundred thousand dollars. The mortgage which was given as security for said note covers two separate pieces of property, namely 216 and 222-224 Naugatuck Avenue, Milford, Connecticut.
The note is presently in default causing, the plaintiff to bring this action. The defendant Salcoy Corporation is the record owner of the properties, while the defendant Gregory Coyle is in possession of the premises. Mr. Coyle, who is the president of the defendant Salcoy, took over the active management of the corporation upon the death of his mother in April of 1992. He approached the plaintiff bank seeking to refinance the mortgage. The bank offered him the opportunity of reducing the payments on the mortgage to an amount equal to the rents received, however, the full amount of the mortgage would become due at maturity. The modification agreement, however, was never executed. Thereafter, the defendant Coyle, acting through his attorney, offered to surrender the commercial property to the bank in full and final settlement of the amount due. This offer was rejected by the plaintiff bank.
The defendant Coyle alleges that the plaintiff bank's refusal to accept the deed of the commercial property, 222-224 Naugatuck Avenue, constituted a breach of good faith and fair dealing and, furthermore, that the plaintiff harassed the defendant, in violation of Conn. General Statutes 36-243, et seq. and the Connecticut Unfair Trade Practice Act, 42-110a, et seq. of the Conn. General Statutes. They are asking the court to enter a strict foreclosure against the property known as 222-224 Naugatuck Avenue and to deny any foreclosure against the residential property known as 216 Naugatuck Avenue. In addition, they are asking the court to deny to the plaintiff any deficiency that they may claim.
The parties have stipulated that the value of the residential property located at 216 Naugatuck Avenue shall be $132,000.00.
The value of the commercial piece at 222-224 Naugatuck Avenue is in dispute and the court has received evidence as to the value of said property from the appraiser's, one representing the plaintiff and the other representing the defendants. The plaintiff's appraiser, with 26 years of experience as a certified appraiser, valued the property at $153,000.00: $65,000.00 for the land and $88,000.00 for the improvements thereon. In arriving at this conclusion, he made use of comparables, all of which were located in the City of Milford. CT Page 1099
The defendants' appraiser, who has been a certified appraiser for two years, has valued the property at $250,000.00. It should be noted here that the comparable sales employed by this appraiser were properties located in Madison, Guilford and Middletown, all of which are a substantial number of miles distant from Milford. While the defendants' appraiser states that the guidelines as to distance applies only to residential properties, the distances between the subject property and the comparables employed are beyond what the court would deem to be reasonable. They are all a considerable number of miles away and there are several different communities lying between them.
During all of this time, Mr. Coyle attempted to sell 222-224 Naugatuck Avenue. The only offer he received was for $189,000.00. This figure was not acceptable to the bank. It should also be noted that, under the terms of the stipulation, as to the value of the 216 Naugatuck Avenue property, the land is valued at $40,000.00. The 222-224 Naugatuck Avenue property has a land area of approximately twice the size of the adjacent 216 Naugatuck Avenue property, yet it is given a value only of $65,000.00 by the plaintiff's appraiser.
The court finds the value of the subject property to be $189,000.00. The value of the land is found to be $80,000.00, while the value of the improvements is found to be $109,000.00.
One of defendants' defenses is based on the plaintiff's refusal to accept a quitclaim deed to 222-224 Naugatuck Avenue as full and final payment of the mortgage note, alleging that the bank's own appraisal at the time was in excess of the debt then owing.
In Bank of Boston v. Platz, 41 Conn. Sup. 587, 589, the court stated:
 "The general rule is that both payment of and tender of payment of the debt must be in money, unless the parties agree otherwise or the obligee consents to accept some other medium of payment. 60 Am.Jur.2d, Payment Section 22. In Maryon's Bank Shops, Inc. v. Arrow Stores, Inc., 149 Conn. 149, 155-56, 176 A.2d 574 (1961), the Supreme Court defined tender as `an offer to pay a debt . . . [and] the offer to pay involves, as a general rule, the actual production of the money and the placing of it in the CT Page 1100 power of the person entitled to receive it.' See also, Hall v. Appel, 67 Conn. 585, 35 A. 524 (1896).
 This rule applies to mortgage debts. `A debtor has no right to deed the property securing a debt to the creditor in settlement of the debt where the contract provided for the payment in money.' 60 Am.Jur.2d, Payment Sec. 51, pp. 911-12; Schmahl v. A.V.C. Enterprises, Inc., 14 Ill. App. 3
d, 324, 499 N.E.2d 572 (1986), Stone v. Watt, 81 S.W.2d 552 (Tex.Ct.App., 1935), 55 Am.Jur.2d, Mortgages Sec. 437."
The court goes on at page 591 to say:
 "Offer of property is not full payment of the debt; 60 Am.Jur.2d, Payment Sections 32, 51; 55 Am.Jur.2d, Mortgages Sec. 437; even if the value of the property exceeds the debt. Bank of Boston v. Platz, supra pg. 591."
This same court goes on further to state the following relating to the validity of title that might be conveyed by the deed.
 "Moreover, the offer of the deed is not tender in full payment because of potential questions of the validity of title conveyed by the deed. The deed may later be attacked on the ground that it was not given for adequate consideration. Cohen v. Bridgeport Plumbing Supply Co., 96 Conn. 696, 706, 115A 328 (1921), D.R. Caron, `Connecticut Deeds in Lieu of Foreclosure: Lender Concerns and Title Issues', 64 Conn. B.J. No. 6, pp. 433, 434 (1990). If the mortgagor goes into bankruptcy, the bankruptcy court can set aside the deed as a preference. D.R. Caron, supra, 444. The deed given to the mortgagee can result in merger of the mortgage can result in merger of the mortgage interest into the fee and extinguishment of the mortgage, in the absence of evidence of the mortgagee's contrary intent. Glotzer v. Keyes, 125 Conn. 227, 235, 5 A.2d 1 (1939). These potential assaults upon the validity of the title conveyed by the defendants' deed justify the plaintiff's refusal to accept it in payment or in reduction of the debt. The deed is not the equivalent of a foreclosure judgment because, as stated in First Bank v. Simpson, 199 Conn. 368, 373-74, CT Page 1101 507 A.2d 997, (1986), `[a] judgment of strict foreclosure vests absolute title in the foreclosing plaintiff, upon the failure of the other parties to redeem the property. When title becomes vested, it is free and clear of all foreclosed interests and, therefore, the foreclosing plaintiff can sell the property completely for its own benefit. Any price received by the mortgagee is not subject to claims by parties whose interests had been foreclosed."' Bank of Boston v. Platz, supra 591-92.
The defendants further allege that their client was harassed by the plaintiff in its efforts to collect the monies due them in violation of 36-243a of the General Statutes. Section 36-243a is the definition section of Chapter 647a of the General Statutes entitled "Regulation of Creditors Collection Practices. . . . This chapter relates to consumer debt whereas the note in this matter specifically describes the loan as a commercial loan. That aside the alleged acts which the defendants claim constitute harassment, would hardly reach that magnitude. They may be described as aggressive, but the court does not find that they reach the threshold of being harassing. On one occasion, Mr. Coyle found a business card left by a representative of the bank telling him that the problem would not go away urging him to contact the bank. These notes were also left on his truck and another on his meter box. There was also a tape of a telephone conversation between Mr. Coyle and a bank official. While Mr. Coyle may have been upset by the aggressiveness of the bank, these isolated instances of what might be described as somewhat aggressive collection practices do not amount to harassment.
If anything, the court would describe them as an effort to convey to Mr. Coyle the urgency of the situation and, although they might be described as aggressive, the court finds that they do not rise to the level of what could be described as harassment.
The defendant has also alleged that the plaintiff has violated the Connecticut Unfair Trade Practices Act (CUTPA), Conn. General Statutes 42-110a, et seq. While our Supreme Court has not ruled specifically on the applicability of our Unfair Trade Practices law to banks, it has done so in the area of securities transactions, finding that CUTPA did not apply. See Russell v. Dean Witter Reynolds, Inc., 200 Conn. 172. Subsequently, using that decision as a basis, several Superior Court decisions have been rendered holding that banks are exempt from CUTPA. Bridgeforth v. Fleet Bank of Connecticut, 7 Conn. L. Rptr. NO. 1, 27, 28 (June 29, 1992) CT Page 1102 (Hadden, J.), American National Bank v. Ginsburg, 6 Conn. L. Rptr. No. 3, 80 (March 23, 1992) (Curran, J.); Evervest, Inc. v. The Advent Bank, 4 Conn. L. Rptr. 326, 327 (1991) (Wagner, J.); Deposit Insurance Corporation, as receiver for City Trust v. P.P.S. Associates, 18 CLT No. 45, 34-35 (D. Conn., September 22, 1991) (Eagan, V.S.M.J.).
The court enters judgment of foreclosure by sale. The court orders that a hearing be held to implement the necessary orders.
By The Court _____________________ By Curran, J.