The Chief Justice
delivered the opinion of the court.
The main question in this case is whether Church was a purchaser of the lands in question from Robinson, and a seller of the same to Matthews under the agreement executed and delivered to Matthews, or whether Robinson holding the legal title, conveyed it to Church as a security for Matthews’ indebtedness, at Matthews’ request, and for Matthews’ benefit as the owner of an equity of redemption. In other words, does Church and his grantees and assignees, (the defendants,) occupy any other relation to the property and to the complainant than that of mortgagees ?
Appellants rest their claims upon the proposition that Matthews is a purchaser of the property from Church, and has no legal or equitable interest other than that of a contractor who has failed, at the day, to comply with the terms as to the time of payment of the purchase money.
There would seem to be very little room for cavil as 'to the true position of the respective parties. The conveyance by Church to these defendants recites the agreement he had executed to Matthews. That agreement provides specifically that the lands which were on that day conveyed to him by Robinson, were deeded by Robinson to Church in connection with the agreement called a defeasance, as one transaction, "for the purpose of mortgaging the said lands to me for the security of payment of twenty-bne hundred dollars, which I have this day loaned -to the said John 0. Matthews, and for which I hold his note for twenty-one hundred dollars, made this day, to run at eight per cent. per annum till the first day of March, A. D. 1877.”
This agreement incorporated' in the conveyance by Church to the defendants, is' full notice to them at the time of their "purchase” that Church was Matthews’ creditor, that he held a promissory note for the indebtedness, and that the deed from Robinson to him was executed and to be held as a; mortgage upon the lands to secure the money mentioned in the note. They had notice further, that Matthews was in possession and liad’ been there for years improving the premises and enhancing its value, this being alleged in the bill and expressly admitted in the answer. It is further admitted in the answer that the defendants a short time after the date of the agreement between Church and Matthews, offered Matthews $7,500 for one half of his interest in 'the property, and that they on discovering the relations of Church and Matthews to the property, sought Church and purchased his* right and title to the whole of Matthew’s interest for the consideration of $2,394, (as testified to and as expressed in the conveyance by Church,) expecting, as they say in their answer, that if Matthews should not promptly pay the money, by the day appointed, his riglits would cease and they would obtain Matthews’ entire interest for less than $2,400; for one half of which they had offered to pay $7,500. This has a striking resemblance to the ancient transaction regarding the "pound of flesh” of which we have somewhere read.
Mr. Church was examined as a witness on the part of the defendants and testified that his object in giving the paper to Mr. Matthews was to relieve him, as he was paying Robinson eighteen per cent, interest for money. He said further that he supposed the property would be long to him in case Matthews failed to pay the note on the day specified in the contract. On cross examination he says that at the time of the execution of the papers he loaned to Matthews $2,100. That he let Matthews have the money ’for the purpose of getting the titles out of Mr. Robinson’s hands for which he said he was paying a "fancy interest.” Understood that Matthews had a " bond for titles” from Robinson similar to this one I gave Matthews, and that Robinson held the title as security for a debt due from Matthews to Robinson. There was no other mortgage or deed made by Robinson to witness except the deed of conveyance. Toole a note from Matthews for the $2,100 money loaned him because it was the custom and he, Matthews, tendered it to witness.
Witness further testified that he expected that, if Matthews failed to pay the money at maturity of the agreement and note, the property would become his and that it would be optional with him to carry out the agreement or not, afterward. He gives the facts and the court will construe and give them such effect as is consonant with the true intent of the parties. The written contract speaks of a loan negotiated by Matthews of Church for a given purpose, that the money was loaned- and a note given therefor, that Robinson, £t Matthews instance (not Church’s 'purchase of the property) conveyed the land and Church executed the defeasance " for the purpose of mortgaging the land to me (Church) for the security of the payment of $2,100, which I have this day loaned to the said Matthews.”
Nothing can be clearer than this as to the intention of all parties, and Church and Matthews agree in regard to the facts leading to this agreement. Church testifies that Matthews introduced him to Robinson "for the purpose of making negotiation and loaning the money, to put me in the same place that Robinson stood in respect to the land.” Church nowhere in the transaction figures as a purchaser of the lands, but does figure solely as a lender of the money to Matthews, and the holder of a security for its repayment. He testifies that he understood at the time of his *153 negotiation that Kobinson held the legal title as security for money owed him by Matthews, and Matthews procured the transfer of that title to-Church in order that he might be secure for the money loaned by him to Matthews.
As before remarked, the deed executed by Robinson, (who, in view of the facts was the holder of the legal title, upon a certain trust, for Matthews,) and the defeasance, were parts of one entire transaction, and had the same .relation to each other and to the position of .the parties thereto, as though .they had been incorporated in one instrument.
In Pierce vs. Robinson, 13 Cal., 116, Field, J., said: “ Parol evidence is admissible in equity to show that a deed' absolute upon its face was intended as a mortgage, and the restriction of the evidence to cases of fraud, accident, or mistake, in the creation of the instrument, is unsound in principle and unsupported by authority. * * * As the equity upon which the courts act arises from the real character of the transaction, it is of no consequence in what manner this character is established, whether by deed or other writing, or parol. Whether the instrument, it not being apparent on its face, is to be regarded as a mortgage, depends upon the circumstances under which it was made, and the relations subsisting between the parties. Evidence of these circumstances and relations is admitted, not for the purpose of contradicting or varying the deed, but to establish an equity superior to its terms.”
This is the rule now quite universally held by the courts of equity. A very large number of cases are cited in Hare and Wallace’s notes to Thornbrough vs. Baker, in Leading Cases in Equity, (4 Am. Ed.) page-1983, et seq., which sustain it. But this case does not rest upon parol evidence, to show the character of the conveyance. “Where the instruments are of even date on their face, and where, being in terms a conveyance and a contract to reconvey on payment of the money passing between them, they are, in legal contemplation, a mortgage.” Harper’s Appeal, 14 P. F. Smith, Pa., 315.
Appellants claim that because the deed was by Robinson and not by Matthews, and because Matthews never held the legal title, he is not entitled to redeem as a mortgagor. This is answered, first by the terms of the agrément which expressly names him as the party in interest to whom tho deed is to be made upon payment by- him, and second by the ruling of the courts, establishing the legal and equitable stains of the parties. In Stoddard vs. Whiting, 46 N. Y., 627, Grover, J., for the court, says: “When the owner of the equitable title directs his trustee of the legal title to convey such title to a third person as security for a debt of the former to the latter, or as security for any ’other person, it is obvious that the latter holds such title as mortgagee of the former. That he did direct such conveyance for such a purpose may be shown by-parol. This is equally as clear as that an absolute deed may be shown to have been intended as a security, and therefore a mortgage. Whether the legal title is held by the party wishing to mortgage the land, and the deed, therefore, given by him, or such title held by a third person, as his trustee, who conveys the same at his request, does not affect the rule in this respect.”
The same court in Carr vs. Carr, 52 N. Y., 251, holds that “in order to establish that a conveyance, absolute on its face, was intended as a mortgage, and to give it effect as such, it is not material that the conveyance should be made by the debtor, or by him in whom the equity of redemption is-claimed to exist.” In that case Daniel D. Carr had ngotiated for the purchase of the premises from one Berry and had paid some of the purchase money, and entered upon and improved them for his own benefit; a pari of the purchase money was advanced by the plaintiff for and at the request of Daniel D., who thereby'became a debtor to the plaintiff for the ampunt thus advanced, and by the arrangement Perry conveyed the premises to plaintiff, thus testing the legal title in him in consummation of the equitable title which Daniel D. had under his agreement, plaintiff to hold the legal title as security for the repayment. “ By the transaction,” the court says, “ a- trust was created in the nature of a mortgage for the security of the plaintiff, with right of redemption in Daniel D. Carr. * * The,fact once established either by the terms of the conveyance or by other evidence, that the grant was intended as a mortgage, the rights of the parties are measured by the rules -of law applicable to mortgagors and-mortgagees, and the conveyance remains but a mortgage until the equity of redemption is foreclosed, and the mortgagee cannot have ejectment against the mortgagor, or those claiming under him, until after foreclosure.” The court further reiterates and approves the ruling in Stoddard vs. Whiting, and Says in conclusion, “the plaintiff cannot maintain ejectment, but he can foreclose his mortgage by action if there is anything remaining due for his advances.” They also repeat what had been said by them in a former case that “the attempt to hold the property as upon an absolute grant, divested of all equity of redemption, was too grosá a fraud to be permitted.” Where land was conveyed by a deed absolute on its face to secure a debt due from another person, and an agreement was entered into by the creditor to convey to the debtor upon payment of the debt; held, that these two instruments constituted a mortgage. Weed vs. Stevenson, 1 Clarke, (N. Y. Chan.) 165; Brown vs. Dean, 3 Wend., 208.
But cumulative of the common rule of equity^ our statute is very plain, and the complainant might rest entirely upon it as to the character of the conveyance to Church. An act to amend the laws in force relating to mortgages, approved January 8, 1853, provides that “all deeds, obligations, conditioned ,or defeasible, bills Of sale, or other instruments .of writing, made for> the purpose, or with the intention of securing the payment of money, whether such instruments o,f writing be from thé debtor^to the creditor, or from the debtor to some third person or persons in trust for the creditor, shall be deemed and held as, mortgages, and shall be subject to the same rules of foreclosure, to the same regulations, -restrictions, restraints and forms, as now are, or hereafter may be prescribed by law in relation to mortgages; but in no case shall the obsolete and antiquated claim in favor of the mortgagee to the right of posses-ion, * * by reason of any alleged failure of payment, or breach of promise, or other default, be recognized or admitted, * * * until all other steps and forms prescribed by law for the foreclosure of mortgages be complied with and observed,” and in the same act it is provided that “the mortgagee is incapable of acquiring possession until after decree of foreclosure, and then only by bidding and outbidding all competitors.”
It is claimed, however, by appellants, that this statute does not apply because, they say, it is limited in its operation by the words “whether such instruments of writing be from the debtor to the creditor, or from the debtor to some third person,” and. that in this case the conveyance is not by the debtor at all. The words last quoted are descriptive of certain instruments embraced within the provisions of the act, but they do not affect the application of the provisions of the act to all instruments of the character mentioned in it, to-wit: writings conveying property for the purpose of securing the payment of money. But in the narrowest construction that may be given, the instruments mentioned in the pleadings, (the deed and the defeasance,) must be taken to be embraced within the terms of -the act, and the remedies therein prescribed must *154 be pursued. The Supreme Court, in McGriff, administrator, vs. Porter, 5 Fla., construes the act “as designed from its whole scope to limit, restrict and control the operation of certain classes of conveyances described therein, and not to enlarge or extend the operative force and effect of others.” That case is referred to as bearing against the complainant in this case, but it is not clear in what respect it is so. Nor is anything determined by the court in Chaires vs. Brady, 10 Fla., 133, opposed to our conclusions here.
It is very clear that Matthews’ position gave him standing in a court of equity to maintain his bill to enjoin proceedings at law designed to harass and evict him from the premises, and a right to redeem and demand a conveyance to himself by such deed as is contemplated in the written agreement of Church. See White and Tudor’s notes and Hare and Wallace’s notes to Thornbrough vs. Baker, Lead. Cas. in Eq., 4 Am. Ed.; Campbell vs. Dearborn, 109 Mass., 130.
The court below was clearly right in decreeing that Church was a mortgagee; that the transfer by him to those defendants invested them with the same rights as belonged to Church and none other, and that Matthews, as the owner of the equity of redemption, was entitled to redeem by paying the amount due upon the note and the agreement, to-wit: $2,100 and interest, and that the defendants must execute the agreement as to a conveyance of the property to Matthews, by such form of deed as was contemplated by it.
This disposes of the most important branch of the case.
Wc next consider the question of 'the tender made by complainant. There were two separate efforts to effect a tender, and to obtain a deed b}r complainant under the agreement. Hie first was abortive, because it was a mere offer to pay, not a tender of money. The next was an actual tender of the amount due at the time. The bill alleges that the complainant tendered the money and demanded a deed of conveyance of the one-half of said premises. The tender was refused, and the defendants declined to convey on the ground that the tender was too late, the money being past due.
Matthews testifies that he went to A. S. Kells, one of the defendants, and told him he wanted to pay the note, “ and required him to make me a deed to my half of the property, and that upon the execution of the deed I would pay him the money.”
At the same time Mr. Harris, in behalf of complainant, handed Mr. Kells a paper signed by H. W. Long, Clerk of court, to the effect that a sum of money had been placed in his hands to pay the lien on the property held by defendants on their executing and delivering to Matthews a good and sufficient deed. “Mr. Kells took it and read it, and said he could do nothing about it.” He further testified that lie instructed J. F. Dunn to tender Mr. Kells, for himself and other defendants, the money 'and demand a deed from them. Kells was the agent of defendants, and he was the only defendant then in Florida.
John F. Dunn testified that “ on the 24th of May, 1877, in Ocala, I, as the attorney of Matthews, and at his request, made a tender of twenty-four hundred and eighty dollars and thirty-three cents to Albert S. Kells, one of the defendants, and as agent for the other defendants. The .tender was made in TT. S. currency, which I then held in my hand for the purpose of paying to the defendants a note given by complainant to John Church or order, Feb. 19, 1875, which note Mr. Kells informed me the- defendants held at that time, and 'demanded of said A. S. Kells said note, and a full complainance of a contract m'ade by the said John Church conditioned upon the payment of said note; contract bearing even date with the note obligating to convey to the complainant certain hands therein mentioned upon the payment of said note, to which he replied; 'the time had elapsed for the payment of the note, and they would not therefore receive the money.’ I received the money from Mr. Agnew upon an order from Matthews, and returned the money to Mr. Agnew the same day.”
There was some other testimony in regard to the tender and demand by the complainant and the refusal by defendants, but the foregoing is all that is deemed material.
It is not seriously questioned that the defndant, A. S. Kells, as one of the assignees or grantees of Church, and one of the owners of the note of Matthews, and the only one accessible within the State, was a proper person to whom the payment or tender of the money due might be made.
Mr. Justice Christiancy in Potts vs. Plaisted, 30 Mich., 149, thus lays down the rule as to the mode in which a tender should be made: “In view of the serious consequences to the holder of a mortgage upon the refusal of a tender — consequences which may often amount to the absolute loss of the entire debt — and in view of the strong temptation which must exist to contrive merely colorable or sham tenders, not intended in good faith, we think the evidence should be so full, clear, and satisfactory as to leave no reasonable doubt that the tender was so made that the holder must have understood it at the time to be a present, absolute, and unconditional tender, intended to be in full payment and extinguishment of the mortgage, and not dependent upon his first executing a receipt or discharge, or any other contingency.” See, also, Cothran vs. Scanlan, 34 Ga., 555; Pulsifer vs. Shephard, 36 Ill., 513; Shaw vs. Sears, 3 Kansas, 242; Hunter vs. Warner, 1 Wis., 141; 1 Duval, (Ky.,) 304; 15 Wend., 637.
If there is any express or implied demand for a receipt, as a condition of payment, it will not be a sufficient tender. Sanford vs. Bulkley, 30 Conn., 344; Perkins vs. Beck, 4 Cr. C. C., 68; Richardson vs. Boston, &c., Co., 9 Metc., 42; Wood vs. Hitchcock, 20 Wend., 47; Brooklyn Bank vs. DeGrauw, 23 Id., 342; Holton vs. Brown, 18 Vt., 224; Loring vs. Cooke, 3 Pick., 48; Frost vs. Yonkers’ Sav. Bk., 8 Him., 26; 70 N. Y., 553; 4 Camp., 156; 5 Esp., 48; Peake, 179; 2 Jones on Mort; secs. 900, 1088.
It is not clear that in the present case the tender by complainant or by his agents was free from such conditions as to justify the court in decreeing that the interest upon the note ceased thereafter. The testimony, on the yvhole, rather brings us to the conclusion that the tender was made conditional upon “the execution-of a good and sufficient deed” and its delivery to Matthews, or a “ demand of said note and a full compliance” of the contract made by Church.
The demand of the complainant that the money be accepted, and that the defendants execute a conveyance in compliance with the Church agreement, seem to have been coupled in such manner as to make the one a condition of the other.
The evidence of tender, in order to give it the effect of stopping the interest, must be “so full, clear, and satisfactory as to leave no reasonable doubt” that the tender was absolute and unconditional, and not dependent upon the delivery of the note or the execution of a discharge or a deed. The decree in this respect cannot be allowed to stand, and so much of it as relieves the complainant of interest upon $2,100 after the alleged tender must be reversed.
That clause of the decree providing for the sale of Matthews’ interest in the lands unless payment be made, &c., is irregular. There is no prayer of the bill warranting it. Neither is there a cross bill in'this case praying a foreclosure and sale. This portion of the decree is not assigned by the appellant as a special ground of reversal, but the whole' decree is before this court, and we must direct that in this respect it be modified and corrected.
This cause is remanded with directions to modify and *155 amend the decree in the respects indicated in this opinion. Tlie decree being reversed in a material part, the costs of the appeal and subsequent proceedings in this court are adjudged against the appellee.