# Third District Court of Appeal

## State of Florida

Opinion filed December 19, 2018.
Not final until disposition of timely filed motion for rehearing.

_____

No. 3D16-2523
Lower Tribunal No. 15-13914
_____

## Westchester Fire Insurance Company, LLC,
Appellant,

vs.

## Kesoki Painting LLC,
Appellee.

An appeal from the Circuit Court for Miami-Dade County, Barbara Areces, Judge.

Eaton & Wolk, PL, and Douglas F. Eaton, for appellant.

Taylor Espino Vega & Touron, P.A., and Daniel R. Vega and Vanessa A. Van Cleaf, for appellee.

Before SUAREZ, FERNANDEZ, and LUCK, JJ.

SUAREZ, J.

Appellant Westchester Fire Insurance Company, LLC (Lee Construction Group, Inc.'s surety) appeals from a final judgment, following a jury trial, entered

in favor of Kesoki Painting, LLC. Because we find that Westchester was not entitled to a directed verdict, we affirm.

BACKGROUND

This case involves a dispute as to the scope of work required under a Subcontract Agreement (the "Agreement"). In March 2014, Lee Construction Group, Inc., the Contractor, entered into the Agreement with Kesoki, the Subcontractor, to perform painting and waterproofing work for the Miami-Dade County Overtown Transit Village. The dispute arises from the work required to waterproof windows. Specifically, the work involved cutting window gaskets[1] and applying a sealant to prevent leaks between the window glass and the frame.

The controlling specifications did not include instructions to cut the gaskets at an angle. However, the County determined that instead of trimming the gaskets level with the frame before applying the sealant, it wanted the gaskets cut at a 45 degree angle. Luis Enriquez, Lee's president, requested a written directive from the project manager after explaining that cutting the gaskets at a 45 degree angle deviated from the specifications and would be more time consuming and costly.[2]

_____

[1] A gasket is a rubber seal inside the perimeter of the window frame that holds the glass in place.

[2] Enriquez was also concerned that cutting the gaskets at a 45 degree angle would impede the windows' structural integrity: "Cutting [the gaskets] level I have no problem doing so because it is listed in the scope of work and if the glazing starts getting loose on those windows in the future than [sic] at least I am covered because it was on the scope to do so. The way it's being requested to do so now leaves me exposed . . . . The pressures at 22 stories are much higher and at the end of the day this will fall on me if I proceed without having this in writing if some

2

Based on written instructions from the County, Enriquez directed Kesoki to cut the gaskets at 45 degrees. Enriquez acknowledged that complying with the County's instructions to cut the gaskets at an angle as opposed to flush was "a bit more work" but suggested that Kesoki wait to submit a change order because the additional cost could perhaps be offset by using a less expensive sealant.

Ultimately, the less expensive sealant was not used, and the anticipated savings never materialized. Consequently, Kesoki submitted a change order to Enriquez in the amount of $104,599.40 for the extra work associated with cutting the gaskets at a 45 degree angle. Enriquez asked Kesoki to reduce the amount, which Kesoki did, submitting a reduced change order in the amount of $95,169.40. Enriquez signed the revised change order, added an additional fifteen percent contractor markup, and submitted it to the County. The County rejected the gasket-cutting change order "for the reason that it is within the scope of the construction documents[.]"

Following the County's rejection of its change order, Kesoki filed suit against Westchester, Lee's surety, alleging that Kesoki was entitled to recover for the extra gasket-cutting work. After the lawsuit was filed, Charles Nyarko, the project architect, rejected the change order in writing, finding that the gasket-cutting work was a requirement under the Agreement's specifications.[3] The case

type of failing happens on these windows down the road."

[3] During cross-examination, however, Nyarko was asked why the specifications did not state that the gaskets were to be cut at 45 degrees. He answered, "I didn't

proceeded to a jury trial, and the jury returned a $91,904.00 verdict in favor of Kesoki. Westchester sought judgment in accordance with a previously filed motion for directed verdict, arguing that (1) Nyarko, the project architect, had the final say as to scope of work disputes, and (2) Kesoki could only modify the Agreement with respect to the gasket-cutting work with a signed writing from both Lee and Kesoki. The trial court denied Westchester's motion and entered final judgment in favor of Kesoki. Westchester timely appealed.

ANALYSIS

We review the denial of Westchester's motion for directed verdict de novo; however, we view all record evidence and every inference based on that evidence in a light most favorable to Kesoki, the non-moving party. See Maggolc, Inc. v. Roberson, 116 So. 3d 556, 558 (Fla. 3d DCA 2013). We also review the trial court's interpretation of the Agreement de novo. Sunhouse Const., Inc. v. Amwest Sur. Ins. Co., 841 So. 2d 496, 498 (Fla. 3d DCA 2003).

Westchester first argues that it was entitled to a directed verdict because the Agreement gives the project architect the final say over disputes that arise between Lee and Kesoki regarding the scope of work, and the project architect determined that the 45 degree cut was required by the specifications. The relevant dispute-resolution provision provides as follows:

intend it to be cut at 45 degrees. That's why it wasn't written."

4

2.5 If a dispute arises between the Contractor and the Subcontractor regarding the Scope of Work, or in the interpretation of the Contract Documents, and the parties hereto do not promptly resolve that dispute, the decision of the [Architect] shall be final.

We agree that this provision would require the parties to be bound by the project architect's determination as to the required scope of work in the event of a dispute between Lee, the Contractor, and Kesoki, the Subcontractor. See James A. Cummings, Inc. v. Young, 589 So. 2d 950, 954 (Fla. 3d DCA 1991) ("When parties to a contract agree by its express terms to be bound to the determination made by an architect, that agreement is binding upon the parties."). But we reject Westchester's argument because unlike in Cummings, where "[s]everal disputes arose" between the general contractor and subcontractor, the evidence in this case, viewed in a light most favorable to Kesoki, establishes that there was no dispute between Lee and Kesoki regarding the scope of the gasket-cutting work.

Before the work started, Lee's president, Enriquez, repeatedly acknowledged that cutting the gaskets at a 45 degree angle would be more work. Enriquez explained to the project manager that the work was outside of the specifications and would be more time consuming and costly. Further, he suggested that Kesoki hold off on submitting a change order in case the cost of the extra work could be offset by other savings. After the work had been completed, Enriquez accepted and signed Kesoki's revised change order. At trial, Enriquez testified that when he submitted the change order, both he and Kesoki believed that the gasket-cutting

5

work was extra work.  Based on our review of the record, we conclude that there was simply no dispute between Lee and Kesoki, so there was nothing for the architect to resolve.

Westchester also argues that it was entitled to a directed verdict because Kesoki failed to establish that it modified the Agreement.  Westchester relies on the following provision:

> 15.2 This Agreement represents the entire agreement and understanding between Contractor and Sub Contractor and supersedes all prior negotiations, representations or agreements, either oral or written. This Agreement may be amended only by an instrument in writing signed by Contractor and Sub Contractor.

We reject this argument because the Agreement also contains a provision that allows Lee to make additions to the Work without invalidating the Agreement:

> 10.7 CHANGES IN THE WORK The Contractor may direct the Subcontractor, in writing, without invalidating this Agreement, to make revisions, modifications and additions to the Work. The Contract Sum and the Contract Time would be adjusted accordingly. The Subcontractor, prior to the commencement of such added, changed or revised Work, shall submit promptly to the Contractor written copies of any claim for adjustment to the Contract Sum and Contract Time for such revised Work in a manner consistent with this Agreement and the Contract Documents.

Here, Lee did what the Agreement provided for by directing Kesoki, in writing, to undertake the additional work of cutting the gaskets at a 45 degree angle.  No

6

modification of the Agreement was necessary because the Agreement itself already allowed Lee to make such changes to the work.[4]

Because we find that there was no dispute between Lee and Kesoki for the architect to resolve regarding the scope of work and the Agreement allowed Lee to make additions to the work, we conclude that Westchester was not entitled to a directed verdict, and we affirm the decision below.[5]

Affirmed.

**ANY POST-OPINION MOTION MUST BE FILED WITHIN SEVEN DAYS.  A RESPONSE TO THE POST-OPINION MOTION MAY BE FILED WITHIN FIVE DAYS  THEREAFTER.**

---

[4] Moreover, the next section, 10.8, provides a means through which Kesoki could submit a claim for additional cost.

[5] Although the Agreement's "pay after paid" clause was briefly mentioned during oral argument, neither party raised any arguments with respect to this clause in their briefs.  We therefore decline to address any issues concerning the clause here.

7